## LUMBER MUT. CASUALTY INS. CO. OF NEW YORK v. STUKES et al.

Civ. A. No. 1608.

District Court, E. D. South Carolina, Columbia Division.

July 17, 1947.

464

N. A. Turner, of Columbia, S. C., for plaintiff.

Shepard K. Nash, of Sumter, S. C., and James Hugh McFaddin, of Manning, S. C., for defendant Melvin Blease Stukes, as adm'r of Estate of Eugene David Stukes, deceased.

C. M. Edmunds, of Sumter, S. C., for defendant G. N. Marshall, doing business as Carolina Roofing Co.

WYCHE, District Judge.

This is a declaratory judgment action brought by the plaintiff, a New York corporation, against defendants, residents of South Carolina, for the adjudication of plaintiff's liability under a policy of public liability insurance issued by it to the defendant Marshall covering a 1946 Model, one and one-half ton Chevrolet stake-body truck.

At the conclusion of the testimony plaintiff and the defendants made motions for directed verdicts.

The material provisions of the policy of insurance, under the issues made by the pleadings, are as follows: In coverage A the plaintiff agreed with the insured "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, * * * because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile." In paragraph II plaintiff agreed to " * * * (a) defend in his name and behalf any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent; * * *."

"Exclusions

"This policy does not apply:

"(d) under coverages A and C, to bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of the automobile".

"Conditions

"7. Assistance and Cooperation of the Insured (Coverages A and B). The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

Before the institution of this action by the plaintiff, the defendant Melvin Blease Stukes, as administrator of the estate of Eugene David Stukes, deceased, had instituted an action in the State Court against the defendant Marshall, the named insured, for damages on account of the wrongful death of Eugene David Stukes, alleged to have been caused by the negligence of the defendant Marshall in the ownership, use and operation of the Chevrolet truck covered by the foregoing described insurance policy, when the truck collided with another truck owned by one D. W. Booth, on or about June 13, 1946, in which Eugene David Stukes received injuries, resulting in his death.

Plaintiff asks this court to declare that the said policy of insurance is not in force, and of effect, as regards the action brought by the administrator of the estate of Eugene David Stukes, upon two grounds: (1) because Eugene David Stukes at the time of his injuries and death was an employee of Marshall, the named insured, and was injured while engaged in the employment of Marshall; (2) because Marshall failed and refused to cooperate with the plaintiff and to divulge full, complete and direct information concerning his employer-employee relationship with Eugene David Stukes and other riders in the insured truck, and for this reason has materially prejudiced the plaintiff under the contract of

insurance and constitutes a violation of the provisions of the policy.

The testimony discloses that the defendant Marshall was engaged in the roofing business as the Carolina Roofing Company at Sumter, South Carolina, in which business Marshall employed salesmen to secure contracts to cover roofs and put sidings on buildings. When such salesmen secured such contracts Marshall engaged subcontractors to do the work necessary for the completion of the contracts. The subcontractors in turn employed laborers to help them do the necessary work.

In pursuance of this policy, Marshall contracted with one J. M. Timmons to put roofing and siding on buildings for him. Under the agreement Marshall was to furnish necessary materials for the job and a truck for the transportation of the same to the jobs he had under contract; to furnish gasoline and oil for the truck, and to pay for the upkeep of the same; to pay Timmons $1 a square to put the roofing on the buildings, and $4.50 a square to put on the siding; in consideration of which Timmons agreed to put the roofing and siding upon the buildings and to furnish all tools and labor necessary for the job. Under the agreement Timmons was to hire, without any control, suggestion or recommendation from Marshall, such laborers as he desired for the work, and to fire them, if he saw fit, without consulting Marshall; Marshall had no control over the laborers hired by Timmons; he had no right to control or direct the manner in which the details of the work progressed; Timmons contracted to do the work in accordance with his own judgment and methods and without being subject to Marshall except as to the result of the work; Timmons had the right to employ and direct the action of the laborers, and to decide what amounts they should be paid, without control or suggestion from Marshall, and was free from any superior authority in Marshall to say when the specific work should be done or what the laborers should do as it progressed; Marshall had no right or control or supervision over the work performed by Timmons; if the work performed by Timmons was unsatisfactory, Timmons had to do it over at his own expense to the satisfaction of the owner of the building. Timmons paid his employees by the hour. If Timmons lost money on a contract it was his loss and not Marshall's.

Timmons used the truck furnished him by Marshall to transport materials and his employees from their homes to the different jobs; for such transportation Timmons' employees were charged three per cent. of the amount of their wages.

Employees of Timmons were not paid for the time consumed in riding to and from the place of 'their work.

On June 13, 1946, Timmons picked up at their homes three of his employees, one of whom was Eugene David Stukes, and they rode in the truck furnished by Marshall to Timmons under the foregoing agreement, and which was covered by the policy of insurance herein involved, to a job in Camden, South Carolina, where they covered a roof, and from there rode to a place approximately five miles from Hartsville, South Carolina, where they started on another job, but when it began to rain at between 4:30 and 5 o'clock p. m. they quit the job to return to their homes. On the way home, about eight or nine miles from the place of work they had quit, and about thirty minutes after they had quit work, the truck in which they were riding collided with a truck owned by D. W. Booth, and Eugene David Stukes received injuries from which he died.

Under the facts in this case, and under the law of South Carolina, I must conclude that Timmons was an independent contractor, and that Eugene David Stukes was an employee of Timmons, and not an employee of Marshall, at the time of his injuries and death, and for that reason he does not come within the exclusion clause of the policy of insurance. McDowell v. Stilley Plywood Co., 210 S.C. 173, 41 S.E.2d 872, 875.

In the McDowell case, supra, the South Carolina Supreme Court decided that " ' * * * the retention by the employer of the right to control and direct the manner in which the details of the work are to

be executed and what the laborers shall do as the work progresses is decisive, and when this appears it is universally held that the relationship of master and servant or employer and employee is created. Conversely, when one exercising an independent employment contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be 'done or what laborers shall do as it progresses, he is clearly an independent contractor. The vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details.' "

■ But, if it be conceded that Eugene David Stukes at the time of his injuries and death was an employee of Marshall, the testimony discloses that he was not at that time "engaged in the employment" of Marshall. At the time of the accident Eugene David Stukes was not engaged in any work, and was not performing any services for Marshall, or for anyone else; he was not entitled to any pay, and was not receiving any pay for any employment. He was merely riding as a fare-paying passenger from the place of his work to his home in a conveyance furnished to Timmons by Marshall. The plaintiff relies upon decisions of the South Carolina Supreme Court construing the Workmen's Compensation Law to sustain its contention that Stukes was injured "while engaged in the employment of the insured". In such cases the State Supreme Court was construing the provisions of the South Carolina Workmen's Compensation Law, Code of Laws of South Carolina, 1942, § 7035-1 et seq. and not an insurance contract. It has been repeatedly held that the Workmen's Compensation Law of South Carolina is a remedial statute, and its provisions must be construed broadly and liberally to effectuate its purposes. Any reasonable doubt as to the construction of the Workmen's Compensation Law must be resolved in favor of claimant's, its provisions reconciled if possible, its purposes effectuated, and its presumptions and penalties directed toward the end of providing coverage rather than noncoverage. The basic purpose of the Workmen's Compensation Law is the inclusion of employers and employees and not their exclusion. Buggs v. United States Rubber Co., Winnsboro Mills, 201 S.C. 281, 22 S.E.2d 881; Cokeley v. Robert Lee, Inc., 197 S.C. 157, 14 S.E.2d 889; Ham v. Mullins Lumber Co., 193 S.C. 66, 7 S.E. 2d 712; McDowell v. Stilley Plywood Co., 210 S.C. 173, 41 S.E.2d 872.

■ On the contrary, the South Carolina Supreme Court has decided that in construing insurance contracts the courts are generally inclined to hold an insurer to the performance of its contract, and to prevent as far as it can be done, in reason and justice, an unfair reliance on its part upon technical conditions of the contract to defeat it; where a doubt arises in respect to limitation of liability in an insurance contract, the court will adopt that construction most favorable to insured; in case of uncertainty or ambiguity, an insurance contract must be liberally construed in favor of insured; where a policy of insurance is fairly susceptible of two different constructions, that construction favorable to insured will be adopted; where the language of an insurance contract may be understood in more than one sense, or where it is doubtful whether given words are used in an enlarged or restricted sense, and other things are equal, that construction should be adopted which is most beneficial to the insured. Ward v. Pacific Fire Ins. Co., 115 S.C. 53, 104 S.E. 316; Wheeler v. Globe & Rutgers Fire Ins. Co., 125 S.C. 320, 118 S.E. 609; Hamilton Ridge Lumber Corp. v. Boston Ins. Co., 133 S.C. 472, 473, 131 S.E. 22; Parker v. Jefferson Standard Life Ins. Co., 158 S.C. 394, 155 S.E. 617; Beckett v. Jefferson Standard Life Ins. Co., 165 S.C. 481, 164 S.E. 130; Schultz v. Benefit Ass'n of Railway Employees of Chicago, Ill., 175 S.C. 182, 178 S.E. 867; Prosser v. Carolina Mut. Ben. Corp., 179 S.C. 138, 183 S.E. 710; Walker v. Commercial Casualty Ins. Co., 191 S.C. 187, 4 S.E.2d 248. An examination of the

decisions of the South Carolina Supreme Court will disclose that that court "has made it the almost universal rule to construe any clause of an insurance policy against the insurer, when there existed the least doubt as to the meaning of the language employed." Bolt v. Life & Casualty Ins. Co., 156 S.C. 117, 152 S.E. 766, 767.

Moreover, the general rules of construction applicable to the construction of a contract differ from those which apply to the construction of a statute. In construing a contract the court must ascertain and give effect to the real intent of the parties. But in construing a statute no mutuality of agreement is to be considered; the intent to be ascertained is that of the legislative body. The liability of the employer under the Workmen's Compensation Law does not arise from any agreement of the parties, but from the law itself. B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Cas. Co., 10 Cir., 147 F.2d 536. Furthermore, the words of the South Carolina Workmen's Compensation Law, Code 1942, § 7035-2, "arising out of and in the course of the employment" differ materially from the words in the exclusion clause "while engaged in the employment of the insured".

"While" is defined as "a space of time, especially when short and marked by some action or happening". Webster's New International Dictionary, 2d Ed.; Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 2 S.E.2d 303. The word "engaged" connotes action. "Engaged" means "occupied; employed;" "to take part in or to be employed in, however the employment may arise". "To 'engage' is to embark in a business; to take a part; to employ or involve one's self; to devote attention and effort". Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, 520; Ayres v. Harleysville Mut. Casualty Co., supra; Words and Phrases, Perm.Ed., Vol. 14, pages 589, 597; Webster's New International Dictionary, 2d Ed.

On the other hand, the statutory phrase "arising out of and in the course of the employment" is elastic. It "is deceptively simple and litigiously prolific." Cardillo v. Liberty Mutual Insurance Co., 329 U.S. 698, 67 S.Ct. 801, 807, Opinion dated March 10, 1947. These seemingly simple words "have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite what seems to be an authority for resolving in his favour, on whichever side he may be, the question in dispute." Lord Wrenbury in Herbert v. Fox & Co. [1916], 1 A.C. 405, 419, Footnote, Cardillo v. Liberty Mutual Insurance Co., supra.

In construing a similar exclusion clause in an insurance policy under a similar state of facts, the Circuit Court of Appeals of the Tenth Circuit in the Passmore case, supra [147 F.2d 539], said: " *  *  we are constrained to hold, in the light of the Oklahoma decisions, that (its employee) Little at the time of the accident was not 'engaged in the business' of Passmore. With one exception, the adjudicated cases in other jurisdictions support this view." The South Carolina Supreme Court and the Oklahoma Supreme Court apply the same rules of construction to insurance contracts. Illinois Bankers' Life Ass'n of Monmouth, Ill., v. Jackson, 88 Okl. 133, 211 P. 508; Barnett v. Merchants' Life Ins. Co., 87 Okl. 42, 208 P. 271; Ward v. Pacific Fire Ins. Co., supra; Wheeler v. Globe & Rutgers Fire Ins. Co., supra; Hamilton Ridge Lumber Corp. v. Boston Ins. Co., supra; Parker v. Jefferson Standard Life Ins. Co., supra; Beckett v. Jefferson Standard Life Ins. Co., supra; Schultz v. Benefit Ass'n of Railway Employees of Chicago, Ill., supra; Prosser v. Carolina Mut. Ben. Corp., supra; Walker v. Commercial Casualty Ins. Co., supra; Bolt v. Life & Casualty Ins. Co., supra. They also apply identical rules of construction to their respective Workmen's Compensation Laws. R. J. Allison, Inc., v. Boling, 192 Okl. 213, 134 P.2d 980, 982; Buggs v. United States Rubber Co., Winnsboro Mills, supra; Cokeley v. Robert Lee, Inc., supra; Ham v. Mullins Lumber Co., supra; McDowell v. Stilley Plywood Co., supra.

I think it should be pointed out that in the instant case Eugene David Stukes was not riding in furtherance of the employer's work because of small wages paid him, but was a fare-paying passenger, and at the time of his injuries there existed the relationship of carrier and passenger instead of employer-employee

There is no evidence in the record to sustain plaintiff's second ground upon which it asks the court to hold that the policy of insurance was not in force, and of effect, as regards the action brought by the administrator of the estate of Eugene David Stukes. I am convinced that the agent of the plaintiff was not interested in investigating the question of liability of Marshall, but was altogether interested in trying to defeat the liability of plaintiff under the insurance policy.

Counsel for the plaintiff also made a motion for directed verdict for the plaintiff upon the following ground: That even in the event that it should be determined that Timmons was an independent contractor and Stukes was an employee of Timmons, "then that under the definition of an 'Insured', and qualification of coverage, as defined in the policy, coverage would not be extended to Timmons, Stukes being an employee of his."

This issue was not made by the pleadings and the plaintiff made no motion to amend the pleadings to conform to the proof or otherwise. The complaint asks a declaratory judgment upon the questions alleged in the complaint. After alleging the issuance of its automobile liability policy insuring Marshall from liability arising out of the use of the insured truck, and sub-head (d) under "Exclusions", and paragraph 7 under "Conditions", the complaint alleges: "4. * * * on or about the 13th day of June, 1946, the truck insured under the * * * policy was involved in a collision with a truck owned by one D. W. Booth, and that as a result of the said collision one Eugene David Stukes, who was riding at the time in the cab of the said Marshall truck, received injuries from which he died."

Paragraph 5 alleges that as a result of said collision an action has been brought by Melvin Blease Stukes, as administrator of the estate of Eugene David Stukes, against Carolina Roofing Company (Marshall) and D. W. Booth

"7. * * * plaintiff, * * * called upon the defendant, G. N. Marshall and requested a full disclosure of his employer-employee relationships with the said Eugene David Stukes and the other occupants of the aforementioned truck just prior and at the time of the collision herein referred to, but that the said G. N. Marshall failed and refused, and still fails and refuses, to make a complete disclosure of said employer-employee relationships as requested by this plaintiff.

"8. * * * other persons riding in the truck belonging to the defendant G. N. Marshall, * * * received injuries * * * *each of whom has a potential claim against the said G. N. Marshall and as a result of which the said G. N. Marshall may make claim against this plaintiff under its contract of insurance herein before mentioned.*

"9. * * * that * * * Eugene David Stukes and the other riders upon the said truck at the time of the said collision *were employees of the said G. N. Marshall, * * * and the policy of liability insurance issued by this plaintiff affords no coverage to the said G. N. Marshall against claims made by such employees.*

"10 That the failure and refusal of the said G. N. Marshall, * * * to cooperate with plaintiff and to divulge full, complete and direct information concerning his employer-employee relationships with the said riders in the said truck has materially prejudiced the plaintiff under its contract of insurance and constitutes a violation of the said policy.

"11. That the defendant G. N. Marshall has heretofore demanded of the plaintiff that *it undertake the defense of the action heretofore entered by the Administrator of the Stukes* Estate * * * and * * * that in the event that a judgment is obtained *against the defendant, G. N. Marshall* in said litigation that a claim will be made

against the defendant on account thereof." (Italics added.)

These are the allegations, and the only material allegations, defendants were required to answer. To sustain the additional ground for a directed verdict plaintiff relies upon paragraph III of the insurance contract, which is as follows:

"III. Definition of 'Insured.'

"The unqualified word 'Insured,' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:

"(a) * * *
"(b) * * *
"(c) * * *
"(d) to any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

It is true that Timmons was using the truck at the time of the accident with the permission of Marshall, the named insured, and, consequently, under paragraph III he would be considered an insured, but it should be pointed out in this connection that a subcontractor is not a workman or employee under the South Carolina Workmen's Compensation Law. McDowell v. Stilley Plywood Co., supra. This paragraph has no application to the issues involved in this controversy. Whether this paragraph excludes any claims or threatened suits against the thus defined insured Timmons from the coverage of the policy of insurance, or whether the insurance company is bound under the policy of insurance to defend any suits against Timmons, or to pay any amount recovered against Timmons by the administrator of the estate of Eugene David Stukes or by any of the other injured riders on the truck, or whether Timmons is obligated to the estate of Stukes under any Workmen's Compensation Law, are questions which are not involved in this action. There is no evidence that any claims have been filed against Timmons, or any suits filed or threatened to be filed against him by any one, and there is no question presented by the pleadings or the evidence as to whether or not plaintiff is bound to defend any suit or to pay any judgment which may be recovered against Timmons, and plaintiff has not asked that such questions be decided in this action for a declaratory judgment. The question here is, whether or not the plaintiff insurance company, under the facts in this case, and under the alleged provisions of the policy of insurance, has agreed to defend the action instituted by the administrator of the estate of Eugene David Stukes against Marshall, even if such suit is groundless, false or fraudulent, and to pay any amount that may be recovered in said action. I think it has.

For the foregoing reasons, I granted the motion of the defendants for a directed verdict.