## 15925

McDOWELL *ET AL.* v. STILLEY PLYWOOD CO. *ET AL.*

(41 S. E. (2d) 872)

*Messrs. Wise & Whaley* and *T. E. McCutchen,* all of Columbia, for Appellants, cite:

*Messrs. J. Reuben Long* and *Ernest E. Richardson,* of Conway, for Respondents, cite:

March 14, 1947.

BAKER, CJ.: The only issues in this appeal necessary to be decided are: (1) Was the deceased, Wilbert K. McDowell, at the time of his injury, an independent contractor or a subcontractor of Stilley Plywood Company, and (2) If an independent contractor or subcontractor, is Stilley Plywod Company liable for compensation for injuries to McDowell as a "workman" under the terms of Section 19 of the Workmen's Compensation Act.

The appellant, Stilley Plywood Company, was a partnership engaged in the manufacture of lumber products, and owned a majority of the trees or timber which they manufactured into plywood, although they also purchased from time to time suitable logs delivered at their mill from anyone offering same for sale at such price as they were willing to pay. But we are concerned here with the cutting and delivering of timber owned by said appellant; and the fact that on occasions, McDowell had cut and delivered timber to them other than that which they owned is merely incidental as a sidelight in determining his status.

On July 11, 1942, Stilley Plywood Company entered into a written logging contract with J. D. Anderson and Mack Anderson, in which contract the Andersons are referred to

throughout as "independent contractor", and providing in part:

"Whereas, it has been agreed by the said Stilley Plywood Company, a co-partnership, and the said J. D. Anderson and Mack Anderson, independent contractor, that they should enter into a contract whereby the said independent contractor shall cut, log and haul to the mill of the said Stilley Plywood Company, a co-partnership, to Conway, South Carolina logs to be cut from timbers or lands owned by the said Stilley Plywood Company, a co-partnership, whether the same be owned by Stilley Plywood Company, a co-partnership, through timber leases or as owner of the fee-simple title in the land.

"(1) Stilley Plywood Company, a co-partnership; shall from time to time furnish timbers to be cut, logged and hauled to the said mill by the said J. D. Anderson and Mack Anderson as independent contractor.

"(4) Since the value of the services to be performed by the independent contractor will vary from time to time by reason of differences in distances of hauls of various tracts of timber and in the growth per acre and cutting conditions and unforeseen weather conditions, it is agreed that the compensation to be paid by the employer to the independent contractor shall be paid upon the basis of the Doyle scale measurement of the logs per thousand feet but that the price per thousand feet shall be agreed upon my memorandum reduced to writing and signed by the parties from time to time before the commencement of the cutting upon each separate tract of land.

"(5) Stilley Plywood Company, a co-partnership, shall have the privilege of designating the tract of land upon which cutting operations shall be performed from time to time and where the cutting shall commence on each tract and to require that the independent contractor shall cut the timber according to sizes and species as directed at the commencement of the operations. ·

"(6) Stilley Plywood Company, a co-partnership, further reserves the privilege of requiring the independent contractor to discontinue cuttings upon any given tract at such time as it may desire if weather or other conditions are such that it is impractical to log or to use the timber from such tract at any given time.

"(7) Stilley Plywood Company, a co-partnership, further reserves and shall have the privilege from time to time of inspecting the operations to determine whether or not the timbers are being cut according to the terms of this contract but Stilley Plywood Company, a co-partnership, shall have absolutely no control over the actual cutting operations or over the employees of the independent contractor but shall only have the right to require of the independent contractor that the completed product be delivered to the said Stilley Plywood Company, a co-partnership, so as to conform to the sizes, dimensions and specifications as from time to time the independent contractor is directed to cut and deliver to the said mill of Stilley Plywood Company, a co-partnership.

"(10) Stilley Plywood Company, a co-partnership, shall at no time be in anywise liable or responsible for any compensation which the independent contractor agrees to pay to his employees or for any other duty, obligation or liability of the independent contractor to his employees."

The deceased, McDowell, was then working for the Andersons, but the precise nature of their relationship was not ascertainable at the time of the hearing on this case (in May and August 1945) for the reason that all three of them were then dead.

A short while after the execution of the contract above referred to, Mack Anderson died, and from then until some time in 1944, J. D. Anderson continued to perform the conditions thereof, and then McDowell began to carry out, in conjunction with J. D. Anderson, the provisions of the contract, and continued to do so until his injury, and death two days later, on January 13, 1945. While apparently there

was no written contract between J. D. Anderson and Mc-Dowell (nor a written contract between them and Stilley Plywood Company), the record establishes that a partnership agreement between Anderson and McDowell was entered into, and recognized not only by them but also by Stilley Plywood Company, all in full accord with the contract of July 11, 1942, with the two Andersons. There is positive testimony in the record that both J. D. Anderson and McDowell had stated they were partners in these logging operations, and the testimony aside from such statements on their part is convincing that they shared the profits, shared the expenses, hired (and discharged at will) all employees working for them, and paid all of such employees, the Stilley Plywood Company having no knowledge of these employees, nor exercising the slightest control over them. Mr. Anderson and Mr. McDowell were in no wise limited in their logging operations to logging the timber of Stilley Plywood Company, and this is borne out by the fact that occasionally they sold logs to Stilley Plywood Company.

Necessarily, Stilley Plywood Company pointed out to Mr. Anderson, and more especially to Mr. McDowell, who was in charge of the cutting and decking of the logs, the boundary lines of the property on which the logging operations were to be carried on, and advised them of the size of the timber to be cut, etc., but exercised no other control over them. Messrs. Anderson and McDowell were paid by Stilley Plywood Company in accordance with the number of feet of logs delivered, and on no other basis.

The normal basic pay for logs delivered was at the rate of $20.00 per thousand feet, $12.00 for the decking of the logs, and $8.00 for the hauling to the mill. McDowell was in charge of-the decking and Anderson of the hauling. While on occasions they were paid together, or at least one of them received the pay for both, ordinarily separate checks were issued to them. Each received duplicate slips showing the delivery of logs. Anderson and McDowell individually

owned some of the equipment used in these logging operations, and other equipment was furnished to them by Stilley Plywood Company on a rental basis, in accord with the terms of the contract, and while said Company advanced credit to both Anderson and McDowell for repairs to their individually owned equipment, such advances were deducted from their checks representing their earnings.

There is a scintilla of testimony in the record on the part of claimants' witnesses, if certain statements made therein are segregated from their testimony as a whole, from which it could be concluded that Mr. McDowell was an employee of Mr. Anderson, and thus bring the case within our decisions in *Kennerly v. Ocmulgee Lumber Co.*, 206 S. C. 481, 34 S. E. (2d) 792, and *Hopkins v. Darlington Veneer Co.*, 208 S. C. 307, 38 S. E. (2d) 4; but when such witnesses' testimony is read as a whole, it is obvious that their testimony tending to establish that McDowell was an employee of Anderson rests entirely on surmise, conjecture and speculation, and therefore has no probative value. *Rudd v. Fairforest Finishing Co.*, 189 S. C. 188, 200 S. E. 727, which case is cited with approval in *State ex rel. Daniel, Atty. Gen. v. Wells*, 191 S. C. 477, 5 S. E. (2d) 181.

If it be conceded that there is slight testimony that McDowell was occupying a dual relationship with Anderson in these logging operations, that is, of employee and partner, or that there is slight testimony from which it could be inferred he was an employee of Anderson, and that he was paid a portion of the net profits as a part of his remuneration as an employee, yet this case involves the jurisdiction of the South Carolina Industrial Commission to make an award, and we have the right in such instance to review the action of the Commission, "even to the extent of finding the fact to be other than the Commission found it". We quote from *Knight v. Shepherd et al.*, 191 S. C. 452, 457, 4 S. E. (2d) 906:

"It is suggested that we are bound by the fact finding of the South Carolina Industrial Commission, which held that it lacked jurisdiction. It is true that as to disputed facts which do not go to the jurisdiction, we are bound by the finding of the Commission, but where the only question presented is whether or not the jurisdictional fact exists entitling the claimant to be heard before the Commission, we have a right to review the action of the Commission, even to the extent of finding the fact to be other than the Commission found it."

After a very careful study of the record, we are forced to the same conclusion as that reached by Honorable John W. Duncan, the Hearing Commissioner, to-wit, "that the said Company (Stilley Plywood Company) exercised no dominion, control or superintendence over the operations being conducted by the deceased, nor did it interfere with the judgment or manner in which the deceased carried on his operations, neither did it have concern with the employment or discharge of such assistants as were used by the deceased in his operations. In other words, the said Company had nothing whatsoever to do with the operations of the deceased other than to specify the boundaries of the property on which the timber was to be cut and the size of the timber to be cut thereon. Other than this, the said Company was interested only in having the requisite feet of timber delivered to its mill at the times at which it was needed and had no concern with the method in which such production was accomplished". We therefore hold that the deceased, McDowell, in carrying on the operations in which he was engaged at the time of his death, was an independent contractor or a subcontractor in logging and in hauling timber to the mill of Stilley Plywood Company.

We are fortified in this conclusion and the reasoning on which it is based by the case of *Hayes v. Board of Trustees of Elon College,* 224 N. C. 11, 29 S. E. (2d) 137, from which we quote:

"While the Commission concluded that the electricians were employees, this is not controlling. There is no substantial controversy as to the facts. This being true, the relationship created by the contract is a question of law, and the conclusion of the Commission is reviewable. *Thomas v. Raleigh Gas Co.*, 218 N. C. 429, 11 S. E. (2d) 297; *Beach v. McLean*, 219 N. C. 521, 14 S. E. (2d) 515.

"The distinction between 'servant' or 'employee' and 'independent contractor' has been frequently discussed and defined by this and other courts as well as by text-writers. (Citing a great number of North Carolina cases and other authorities.)

"It appears from these authorities that the retention by the employer of the right to control and direct the manner in which the details of the work are to be executed and what the laborers shall do as the work progresses is decisive, and when this appears it is universally held that the relationship of master and servant or employer and employee is created.

"Conversely, when one exercising an independent employment contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what laborers shall do as it progresses, he is clearly an independent contractor.

"The vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details."

Our Workmen's Compensation Act having been fashioned to the North Carolina Workmen's Compensation Act, and practically a copy thereof, the opinions of the Supreme Court of that State construing such Act are entitled to great respect.

The only provision of the Act under discussion having any bearing on the issue or issues before the Court is Section 19 (Section 7035-22 of the Code of 1942). Construing this Section this Court has held that the word "workman" is synonymous with the word "employee", and that the *employees* of a subcontractor engaged in the work, business or occupation of the "owner" or principal contractor, are employees of the "owner" within the intendment of the Act, and therefore entitled to the benefits therein provided. *Marchbanks v. Duke Power Company,* 190 S. C. 336, 2 S. E. (2d) 825, *Kennerly v. Ocmulgee Lumber Co., supra,* and *Hopkins v. Darlington Veneer Co., supra.* While as has been stated time and again, the basic purpose of the Workmen's Compensation Act is inclusion of employers and employees and not their exclusion, yet the courts are without authority to enlarge the meaning of the terms used by the Legislature or to extend by construction its scope and intent so as to include persons not embraced by its terms; and one who seeks to avail himself of the Act must come within its terms.

The precise issue under discussion has not heretofore come before the courts of this State, although the opinions in our cases hereinbefore cited indicate that a subcontractor is not a "workman" or employee within the terms of the Act. It was definitely decided in the North Carolina case of *Hayes v. Board of Trustees of Elon College, supra,* that a subcontractor or independent contractor did not come within the terms of the Act of that State, and as aforementioned, the North Carolina Compensation Act was not only the model used in the preparation of our Compensation Act, but practically copied.

"In the absence of a statutory provision to the contrary, an injured person who is not an employee, but an independent contractor for the work, is not within the scope of a compensation act; and when it appears that the parties have contracted for the performance of work under circumstances which the courts have determined constitute the worker an

independent contractor, an industrial commission has no further powers, and must dismiss the claim. Even though the contract is unfair to the worker, and a studied attempt to avoid the provisions of the compensation act, it bars his claim to compensation if it makes him an independent contractor; and a worker has a right to make such a contract. * * *" 71 C. J., pages 445-446.

The wording of the applicable section of the Workmen's Compensation Act in this State, it seems to us, clearly evinces an intention on the part of the Legislature not to include therein a subcontractor or independent contractor, but only workmen or employees of either the "owner" or of the subcontractor; and that therefore the legal maxim, *expressio unius est exclusio alterius,* is here applicable.

It will be perceived from the foregoing that the South Carolina Industrial Commission did not have jurisdiction to make an award in this case (as was held by the Hearing Commissioner), and that the affirmance of the award of the Majority Commission by the Circuit Court, thereby converting such award into a judgment, was error. This judgment is reversed, and the case is remanded to the Circuit Court for entry of judgment in favor of the appellants.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.