482 S.E.2d 582

**David G. VOSS, Claimant, Respondent,**

**v.**

**RAMCO, INC., Employer, and U.S. Fidelity & Guaranty Co., Carrier, Appellants.**

**No. 2627.**

Court of Appeals of South Carolina.

Heard Dec. 4, 1996.
Decided Jan. 27, 1997.
Rehearing Denied March 20, 1997.

David Hill Keller, of Haynsworth, Marion, McKay & Guerard, Greenville; for appellants.

J. Marvin Mullis, Jr., Columbia, for respondent.

HOWELL, Chief Judge:

Respondent David G. Voss (Voss) filed a workers' compensation claim in connection with an injury he suffered in Washington state. Ramco, Incorporated (Ramco) denied liability, alleging that the South Carolina Workers' Compensation Commission (the Commission) lacked subject matter jurisdiction over Voss's claim. The single commissioner found for Voss, and Ramco appealed to the full Commission. A three member panel affirmed the Commissioner's decision. Ramco appealed to the circuit court, which affirmed the Commission's ruling. Ramco now appeals the circuit court's decision. We affirm.

## I.

Bobby Hawkins (Hawkins) owns Ramco, a company that manufactures small industrial equipment. Ramco is located in Travelers Rest, South Carolina. Bobby Jones (Jones) owns NATCO, also located in Traveler's Rest, a company that sells the equipment manufactured by Ramco. According to Jones, NATCO is not incorporated but, instead, is simply the name under which he presently conducts business.

Voss, a Texas resident, was hired by Jones in Dallas to be a member of Jones's traveling sales force that went from city to city selling Ramco equipment by the pick-up truckload.[1] Under the arrangement between Ramco and NATCO, Ramco would deliver its equipment to the city in which Jones and his sales force were located. In each city, Jones would hold a breakfast meeting with the sales crew of twelve to fifteen persons to plan the sales strategy. At the meeting, Jones would present a map of the city divided into sections, and each salesperson would sign up to cover a particular section. The salespersons were expected to call on all appropriate busi-

---

1. Each truckload generally consisted of a press, a hoist, a band saw, a sidewinder, and a stock feeder stand.

nesses within their section. Hawkins or his representative often attended and took part in the sales meetings.

Jones trained his salespersons to use a standard "sales pitch" when selling the Ramco equipment. As part of the standard routine, the salesperson would show to a prospective customer paperwork indicating the value of the truckload of equipment was approximately $15,000. The salesperson explained to the customer that, in order to avoid shipping the equipment back to South Carolina, he was authorized to sell the equipment at a good price. If the customer made an offer on the equipment, the salesperson would generally then call Larry Masters (Masters), a Ramco employee in South Carolina. Masters's role was to increase the price paid for the equipment and verify to the customer that the equipment was not stolen.[2] In this capacity, Voss called Ramco's office in South Carolina at least two to five times a day. As long as the sales price was more than the cost of the equipment, the salesperson did not need authorization for any sale. Voss sold equipment below his cost between one and ten times. Voss testified that, for new salespersons, Ramco guaranteed that if they called Ramco with an offer of $750 or more three times a day, five days a week, Ramco would give them $1,000 if they did not make a sale that week.

Generally, the cost to the salesperson for each truckload of equipment was between $2100 and $2500. When the equip-

---

2. Voss explained the procedure as follows:

[I]f I went into your place of business for example and I offered you this equipment and you said, "Well, I'll give you $1500.00 for it," then I'll say, "Where is your phone? I'll call my boss and ask him." I would go to the phone. I'd say, "Mr. Masters, this is David Voss. I'm out here in South Carolina," or wherever you were. "Mr. Jones told me to get this equipment out of the warehouse." That automatically told Larry Masters who you were work[ing] for, what price you were working at and what was on the back of your truck without you having to say anything else. He would know what he could go to. You would tell him this was the equipment for $3872.60. Then you would tell him, "I've got an offer for $1500.00. What do I do?" and he would say, "Tell them thank you for their offer but that's low in the money. Ask them how close they can come." He would coach you and tell you what to say to that person and you repeated everything he said to that person back and then you repeated it back and forth until you got the price up.

Counsel for Ramco described the arrangement with Masters as a negotiating ploy known as the "appeal to a higher authority."

ment was sold, the salesperson paid this amount to Jones and kept for himself the difference between the cost and ultimate sales price. Jones then took his predetermined share and forwarded the balance to Ramco. If Voss was paid in cash, he simply passed payment down the line to Ramco through Jones. If he was paid by check made payable to Ramco, he was furnished an identification card that authorized him to cash it. If he could not cash the check, he forwarded the check to Ramco, and Ramco remitted the funds down the line. Lastly, if a purchase order was issued, it was sent to Ramco and payment was made by Ramco to Voss and Jones.

During his employment, Voss worked in many states, primarily in the western part of the United States. Voss never sold equipment in South Carolina and made only one trip to South Carolina to pick up equipment.

## II.

Ramco raises two issues on appeal: whether Voss is a statutory employee under the Act, and whether Voss is entitled, pursuant to S.C.Code Ann. § 42–15–10 (1985), to file a workers' compensation claim in South Carolina. Because both issues are jurisdictional, *see Adams v. Davison–Paxon Co.*, 230 S.C. 532, 543, 96 S.E.2d 566, 571 (1957) (whether a worker is a statutory employee is a jurisdictional inquiry to be resolved by the court); *Moore v. North American Van Lines*, 310 S.C. 236, 423 S.E.2d 116 (1992) (treating as jurisdictional an inquiry into whether the claimant satisfied the requirements of section 42–15–10), this Court has the "power and duty to review the record and decide the issue in accordance with the preponderance of the evidence." *Kirksey v. Assurance Tire Co.*, 311 S.C. 255, 256, 428 S.E.2d 721, 722 (Ct.App. 1993), *aff'd*, 314 S.C. 43, 443 S.E.2d 803 (1994); *accord Brown v. Moorhead Oil Co.*, 239 S.C. 604, 124 S.E.2d 47 (1962). Although doubts about jurisdiction are resolved in the claimant's favor in accordance with the inclusive purposes of the Act, this Court is bound by the Act as written and does not have the power to expand the jurisdictional reach of the Act. *Brown*, 239 S.C. at 607, 124 S.E.2d at 49.

## A.

Coverage under the Workers' Compensation Act is generally dependent on the existence of an employer-employee relationship. *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 182, 41 S.E.2d 872, 876 (1947) ("In the absence of a statutory provision to the contrary, an injured person who is not an employee, but an independent contractor for the work, is not within the scope of a compensation act."); *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 469, 313 S.E.2d 38, 39 (Ct.App.1984) ("No award under the Workers' Compensation Law is authorized unless the employer-employee or master-servant relationship existed at the time of the alleged injury for which claim is made."). However, under certain circumstances, the Act also imposes liability on an employer or business owner for the payment of compensation benefits to a worker not directly employed by the employer:

> When any person, in this section and §§ 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42-1-400 (1985). Thus, depending on the nature of the work performed by the subcontractor, an employee of a subcontractor may be considered a statutory employee of the owner or upstream employer.

■■■■ Ramco argues that, as to it, Voss was an independent contractor, not an employee. This argument, however, is irrelevant to the question of whether Voss is a statutory employee of Ramco. Section 42-1-400 extends workers' compensation coverage to an injured "workman" of a subcontractor performing work which is part of the owner's trade, business, or occupation. As used in section 42-1-400, "workman" is synonymous with "employee." *McDowell*, 210 S.C. at 182, 41 S.E.2d at 876. Thus, section 42-1-400 imposes liability

on an upstream employer if the injured worker is an employee of the *subcontractor*, but not if the worker is an independent contractor of the *subcontractor*. *Neese v. Michelin Tire Corp.*, 324 S.C. 465, 476–77, 478 S.E.2d 91, 97 (Ct.App.1996); *see also McDowell*, 210 S.C. at 183, 41 S.E.2d at 876 (reversing award of workers' compensation benefits because the injured worker was an independent contractor of subcontractor rather than employee of subcontractor). "The fact that the subcontractor, and, by extension, the subcontractor's employees, may be independent contractors as to the upstream employer does not preclude the application of section 42-1-100." *Neese*, 324 S.C. at 473–74, 478 S.E.2d at 95; *accord Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 10–11, 132 S.E.2d 18, 22 (1963) ("Once it is established that the work being done by the subcontractor was a part of the general business of the owner within the meaning of [the precursor to 42-1-400], even though the subcontractor might occupy the status of an independent contractor, the *employees* of the subcontractor so engaged are limited ... to the exclusive remedy of the Workmen's Compensation Act.") (emphasis added); *Murray v. Aaron Mizell Trucking Co.*, 286 S.C. 351, 355, 334 S.E.2d 128, 130 (Ct.App. 1985) (Under section 42-1-400, any contractor for whom a subcontractor undertakes to perform a part of the contractor's trade, business or occupation is liable to pay compensation benefits to an injured employee of the subcontractor in the same manner as if the employee had been employed by the principal contractor, even if the employee's immediate employer is also an independent contractor). Accordingly, the nature of Voss's and Jones's relationship with Ramco is not relevant to the statutory employee inquiry. Instead, it is the nature of Voss's employment relationship with Jones and the nature of the activities performed by Jones that are relevant to the determination of whether Voss is Ramco's statutory employee.

In this case, there is no doubt that Voss is an employee, rather than independent contractor, of Jones. Jones exerts almost complete control over Voss, directing where Voss works, as well as how and to whom Voss sells the Ramco equipment. Moreover, Jones had the ability to terminate Voss. Therefore, because of the nature and extent of the control Jones has over Voss, Voss is properly considered to be an employee of Jones. *See South Carolina Workers' Compen-*

*sation Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 549, 459 S.E.2d 302, 303 (1995) (whether an individual is an employee or an independent contractor is generally resolved by determining whether the alleged employer has the "right and authority to control and direct [the] particular work or undertaking, as to the manner or means of its accomplishment."). Thus, the question now becomes whether Jones's activities are part of Ramco's trade, business or occupation within the meaning of section 42–1–100, such that Voss should be considered a statutory employee of Ramco.

 To determine whether the work performed by a subcontractor is a part of the owner's business, this Court must consider whether (1) the activity of the subcontractor is an important part of the owner's trade or business; (2) the activity performed by the subcontractor is a necessary, essential, and integral part of the owner's business; or (3) the identical activity performed by the subcontractor has been performed by employees of the owner. *Smith v. T.H. Snipes & Sons, Inc.*, 306 S.C. 289, 292, 411 S.E.2d 439, 440 (1991). If any one of these tests is satisfied, the injured worker is considered the statutory employee of the owner. *Riden v. Kemet Elecs. Corp.*, 313 S.C. 261, 263, 437 S.E.2d 156, 158 (Ct.App.1993). Any doubts as to a worker's status are to be resolved in favor of coverage under the Act. *Id.*

As noted above, Ramco is a manufacturer of small industrial equipment. Ramco does not manufacture for its own use, but rather for sale to third parties. It makes these sales through Jones and other similar distributors. Clearly then, selling the equipment it manufactures is an essential part of Ramco's business, an activity without which Ramco could not remain in business. Therefore, pursuant to 42–1–100, because Jones's activities are part of Ramco's business, Jones's employees, including Voss, are considered to be statutory employees of Ramco. *Cf. Marchbanks v. Duke Power Co.*, 190 S.C. 336, 2 S.E.2d 825 (1939) (employee of a subcontractor hired by defendant Duke Power Company who was injured while painting the defendant's utility poles was held to be a statutory employee of Duke Power, because it could not carry on its business if its poles were not kept in sound condition, and, therefore, the work being performed by the subcontractor was part of Duke Power's business); *Hairston v. Re: Leasing,*

*Inc.*, 286 S.C. 493, 334 S.E.2d 825 (Ct.App.1985) (automobile leasing company and dealership were held to be statutory employers of independent contractor's truck driver who was killed while transporting cars, because transporting cars is an essential function of companies that lease or sell cars).

Ramco, however, argues that because it sells its equipment to Jones and other distributors, the further resale of its equipment by the distributors and their salespersons is not an important or integral part of its business. Ramco therefore contends that the activities performed by Jones are not a part of its business, and Voss is not a statutory employee under section 42–1–100. We disagree.

As noted above, Ramco sells its equipment to Jones on consignment, who in turn consigns the goods to his salespersons. It is only when the equipment is sold by a salesperson that Jones receives his fee from the salesperson and Ramco receives its fee from Jones. Given this arrangement, it is clear that Ramco in fact does not "sell" its equipment to Jones but instead retains title to the equipment until it is ultimately sold in the field by one of Jones's salespersons. *See Greenwood Mfg. Co. v. Worley*, 222 S.C. 156, 161, 71 S.E.2d 889, 891 (1952) (when transaction between parties is a consignment, title does not pass; the arrangement between the parties is "merely an agency for the purpose of the sale."). Thus, the activities performed by Jones and his employees are an essential part of Ramco's business, and Voss is a statutory employee of Ramco pursuant to section 42–1–100.

### B.

Because Voss's employment status places him within the scope of the Act, we must now consider whether Voss satisfies the requirements of S.C. Code Ann. § 42–15–10 (1985). Section 42–15–10 provides:

> Any employee covered by the provisions of this Title is authorized to file his claim under the laws of the state where he is hired, the state where he is injured, or the state where his employment is located. If an employee shall receive compensation or damages under the laws of any other state, nothing contained in this section shall be construed to

permit a total compensation for the same injury greater than that provided in this Title.

Thus, the Commission has jurisdiction over an employee's claim only if the employee was hired in South Carolina, injured in South Carolina, or if his employment is located in South Carolina. *See Moore v. North American Van Lines*, 310 S.C. 236, 423 S.E.2d 116 (1992) (commission had no jurisdiction to hear claim of employee who was not hired or injured in South Carolina, and whose employment was not located in South Carolina). In this case, Jones hired Voss while he was in Dallas, and Voss suffered the injury giving rise to his claim in Washington. The Commission, therefore, had jurisdiction over Voss's claim only if Voss's place of employment is South Carolina.

In *Holman v. Bulldog Trucking Co.*, 311 S.C. 341, 428 S.E.2d 889 (Ct.App.1993), this Court for the first time had the opportunity to apply section 42–15–10 to a transient worker. In *Holman*, the claimant was a long-distance truck driver who lived in South Carolina but worked out of and was dispatched from Savannah, Georgia. The claimant picked up his truck in Savannah at the beginning of the week and returned it there at the end of the week, and maintained and washed his truck in Savannah and received his paycheck there. The claimant was required to call his dispatcher in Savannah twice a week and when he delivered or picked up a load or bought fuel. *Holman*, 311 S.C. at 343, 428 S.E.2d at 891. Based on these facts, we held that the claimant's employment was located in Georgia, not South Carolina. We specifically rejected the notion that the place of employment can be located in more than one state, holding that the intent of the legislature was to enact the "base of operation" rule in South Carolina. We pointed out that the use of the word "the" and the singular noun "state" in section 42–5–10 clearly exhibited the legislature's intent that the word "located" referred to one state, not many. 311 S.C. at 346, 428 S.E.2d at 892. To give effect to that legislative intent, we concluded that the employee's place of employment should be determined under the "base of operations" rule, which provides that a worker's employment is located at the "employer's place of business to which he reports, from which he receives his work assignments and

from which he starts his road trips, regardless of where the work is performed." *Id.*

In this case, we are confronted with a nomadic scheme of employment created and implemented by the employer, a scheme that affords the employee little connection to any single state. Therefore, the question is whether the legislature intended to remove from the reach of the South Carolina Workers' Compensation Act the type of employment utilized by Ramco, a South Carolina manufacturer. According to Ramco, the test set forth in *Holman* to determine the "base of operation" forecloses the opportunity for an employee such as Voss to be protected under the Act. We disagree and conclude that Ramco's strained and literal reading of *Holman* subverts the common sense intent of the rule and of the legislature.

*Holman*'s definition of the place of employment as the state from which the employee receives his work assignments and begins his road trips was developed with specific reference to the facts of that case; it was not intended to exclude all types of transient employment that do not fit neatly within the employment ritual of the employee truck driver in that case. While the application of the base of operations rule in *Holman* was correct, and the resort to the law of Pennsylvania for guidance was appropriate, it was not this Court's intention to hold that a class of transient employees could never have a "base of operation" and therefore be limited under section 42–15–10 to the benefits available in two states (the state where the employee hired and the state where the employee was injured), while other transient employees could choose the most advantageous of three states. The concept of the "base of operation" rule presupposes that all employees have a fixed base of operation to which jurisdiction over a workers' compensation claim will attach. Indeed, in the principal case relied upon by Ramco, the employee had a fixed base of operation in a state other than the principal location of the employer's business. *See Minus v. Workmen's Comp. App. Bd.,* 91 Pa.Cmwlth. 281, 496 A.2d 1340, 1342 (1985) (workers' compensation benefits denied in Pennsylvania benefits where it was shown that, although employer's home office was in Pennsylvania, the claimant, who was domiciled in New Jersey and worked exclusively in New Jersey, was provided a perma-

nent distribution point in New Jersey from which he operated.).

As noted above, we held in *Holman* that the location of employment can only be in one state. It necessarily follows that, consistent with the legislature's intent to broaden the reach of the Act by the amendment of section 42–10–15,[3] the location of employment must be in *some* state. Here, although Voss and other NATCO salespersons reported to Jones and received their daily work assignments from Jones wherever Jones was located that day, that temporary location could not be considered a permanent base of operations. And although Voss started his road trips from wherever the group was located, but never from South Carolina, he nevertheless is principally employed in South Carolina because it is the only state in which he has any "base of operation." The employment method utilized by Ramco and Jones prevented Voss from physically working in the state of South Carolina and thus from fitting squarely within the base of operations test. However, as a practical matter, South Carolina is the state where Voss was employed, given the amount of control exerted over Voss by Ramco and Jones, both of whom operated out of South Carolina. Therefore, this Court concludes that, for the purposes of determining whether South Carolina has jurisdiction over Voss's claim pursuant to section 42–10–15, Voss's employment is located in South Carolina.

## III.

In summary, we conclude that, because Voss's direct employer performs activities that are part of Ramco's business within the meaning of S.C. Code Ann. § 42–1–100, Voss is a statutory employee of Ramco. In addition, we conclude that,

---

**3.** Prior to its amendment in 1974, section 42–10–15 provided that an employee injured outside South Carolina could file a workers' compensation claim in South Carolina only if (1) his contract of employment was made in the state; (2) the employer's place of business was in the state (3) the employee's residence was in the state; *and* (4) the contract of employment was for services to be performed not exclusively outside the state. The 1974 amendment liberalized the requirements of existing law by making the conditions for filing in South Carolina "alternative rather than conjunctive, so that a claimant had only to meet one of them to file a claim in South Carolina." *Holman*, 311 S.C. at 344–45, 428 S.E.2d at 891–91.

for the purposes of S.C. Code Ann. § 42–10–15, South Carolina is the state where Voss's employment is located. The Commission, therefore, properly exercised jurisdiction over Voss's workers' compensation claim.

Accordingly, for the foregoing reasons, the judgment below is hereby

**AFFIRMED.**

HUFF and HOWARD, JJ., concur.