510 S.E.2d 431

Edward MILLER

v.

LAWRENCE ROBINSON TRUCKING, d/b/a Robinson Trucking Company, Uninsured Employer, South Carolina Workers' Compensation Uninsured Employers' Fund and Sealand Services, Inc., Defendants,

of whom, S.C. Workers' Compensation Uninsured Employers' Fund is, Respondent,

and Sealand Services, Inc. and Reliance National Indemnity Co. are Appellants.

No. 2905.

Court of Appeals of South Carolina.

Heard Oct. 6, 1998.

Decided Nov. 23, 1998.

Rehearing Denied Feb. 27, 1999.

Edward K. Pritchard, III, Harold E. Trask, and J. Hubert Wood, III, all of Sinkler & Boyd, of Charleston, for appellants.

Ajerenal Danley, of Columbia, for respondents.

CURETON, Judge:

In this admitted death case, the survivors of Edward Miller sought benefits under the Workers' Compensation Act against

both Robinson Trucking Company, the subcontractor/employer, and Sealand Services, Inc., the primary contractor. As Robinson Trucking did not have compensation coverage, the Workers' Compensation Uninsured Employers' Fund was added as a party. The hearing commissioner found the primary contractor and its carrier, Reliance National Indemnity Co., solely liable for payment of all benefits. The contractor and its carrier appealed, arguing the Workers' Compensation Uninsured Employers' Fund should be liable, also. The commission affirmed the commissioner's decision. The Commission was also affirmed on appeal to the circuit court. The contractor and its carrier appeal. We affirm.

## FACTS

On September 28, 1994, Edward Miller (Miller) sustained fatal injuries in an accident that arose out of and in the course of his employment with Lawrence Robinson d/b/a Robinson Trucking Company (Robinson). Although subject to the South Carolina Workers' Compensation Act (the Act), Robinson did not carry workers' compensation insurance coverage. As a result, the South Carolina Workers' Compensation Uninsured Employers' Fund (the Fund) became potentially liable for all benefits payable to Miller's survivors.[1]

At the time of the accident, Robinson was performing work as a subcontractor for Sealand Services, Inc. (Sealand). Miller's survivors filed a claim for workers' compensation benefits and a hearing was held to determine dependency and responsibility for payments of benefits. Sealand argued because Robinson was uninsured, the Fund should be liable for all death benefits.

The hearing commissioner found Sealand to be Miller's statutory employer and held Sealand and its compensation carrier, Reliance National Indemnity Company (Reliance) liable for all payments due on Miller's behalf. Sealand and Reliance appealed the commissioner's decision, which was sustained by the commission. Sealand and Reliance then appealed the order of the commission, and the circuit court affirmed in full. Sealand and Reliance again appeal.

---

1. See S.C.Code Ann. 42–7–200(A) (Supp.1997).

## LAW/ANALYSIS

■  Sealand and Reliance argue the commission erred in holding Sealand, a statutory employer, solely liable for payment of compensation benefits.  We disagree.

■  The concept of statutory employment is designed to protect the employee by assuring workers' compensation coverage by either the subcontractor, the general contractor, or the owner if the work is part of the owner's business.  *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 267 S.E.2d 524 (1980).

> The manifest purpose is to afford the benefits of compensation to the men who are exposed to the risks of its business, and to place the burden of paying compensation upon the organizer of the enterprise.  In consequence, both the owner and the contractors whom he engages to do his work, are subjected to the requirements of the Act, and the workers receive double protection.

*Id.* at 73, 267 S.E.2d at 528 (quoting *Blue Ridge Rural Elec. Co-op. v. Byrd*, 238 F.2d 346, 351 (4th Cir.1956), *rev'd on other grounds*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).  "It is a protection [for] the employees of irresponsible contractors who do not provide workmen's compensation coverage for their employees, and prevents employers from escaping liability by doing through independent contractors what they would otherwise do through their own employees." *Adams v. Davison–Paxon Co.*, 230 S.C. 532, 545, 96 S.E.2d 566, 572 (1957) (discussing the predecessor statute of Section 42–1–400).

■  In South Carolina the statutory employer doctrine is derived from S.C.Code Ann. §§ 42–1–400 through 450.  Section 42–1–400 extends workers' compensation coverage to injured employees of a subcontractor performing work for an owner or contractor.  *Neese v. Michelin Tire Corp.*, 324 S.C. 465, 478 S.E.2d 91 (Ct.App.1996).  The employee of the subcontractor may look to an upstream employer for benefits without regard to whether the subcontractor has workers' compensation coverage.  *Freeman Mechanical, Inc. v. J.W. Bateson Co.*, 316 S.C. 95, 447 S.E.2d 197 (1994) (citing S.C.Code Ann. § 42–1–410).

The contractor who is liable to pay compensation under the statutory employer doctrine is entitled to indemnity from the worker's immediate employer. *Long v. Atlantic Homes,* 311 S.C. 237, 428 S.E.2d 711 (1993) (citing S.C.Code Ann. § 42–1–440). "Thus, under our workers' compensation scheme, the subcontractor is primarily liable and the prime contractor secondarily liable for workers' compensation benefits to the subcontractor's employee." *Freeman Mechanical,* 316 S.C. at 97, 447 S.E.2d at 199.

The upstream contractor may either bring a separate action for indemnification or join the immediate employer as a defendant in the action brought by the employee against the contractor. *Long,* 311 S.C. 237, 428 S.E.2d 711. The employee may recover from either his employer or an upstream contractor, but not from both. *Id.* (citing S.C.Code Ann. § 42–1–450). The effect of these provisions "is to impose the absolute liability of an immediate employer upon the owner and/or general contractor although it was not in law the immediate employer of the injured workman." *Id.* These provisions should not be interpreted to mean the contractor's liability arises only if the immediate employer fails to provide compensation. *Id.*

Our cases hold that where the subcontractor has workers' compensation insurance, the contractor has already indirectly paid the premiums through the contract price. *See Freeman Mechanical,* 316 S.C. 95, 447 S.E.2d 197. When the subcontractor does not have insurance, however, the contractor would not ordinarily have paid premiums on behalf of the subcontractor's employees. To allow the contractor to recover from the Fund, as appellants urge, would enable all those who benefitted from the worker's employment and immunity under the Act to escape liability totally.

Appellants point out Sections 42–1–400 and 42–1–410 provide the "owner" or "contractor" shall be liable for benefits, rather than designating the "owner" or "contractor" as an employer. They contend "the Act itself makes it clear that a 'statutory employer' is not an 'employer' as that term is used in the Act."

We find no merit in this argument. In interpreting a statute, this Court's primary function is to ascertain the

intent of the legislature. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998).

> The interpretation of a term set forth in a statute should support the statute and should not lead to an absurd result. *Hamm v. S.C. P.S.C.,* 287 S.C. 180, 336 S.E.2d 470 (1985). Further, in interpreting a statute, one does not look merely at a particular clause in which a word may be used, but rather looks at the word and its meaning in conjunction with the purpose of the whole statute, and in light of the object and policy of the law.

*South Carolina Coastal Council v. South Carolina State Ethics Comm'n,* 306 S.C. 41, 44, 410 S.E.2d 245, 247 (1991).

In order to make it clear that owners and contractors may also be found liable for injuries to a subcontractor's employee, the Act necessarily must employ these terms. Finding that a contractor can be an "employer" is the bedrock of the statutory employer doctrine and serves the legislative purpose of " 'cast[ing] upon the industry in which [industrial workers] are employed a share of the burden resulting from industrial accidents.' " *Marchbanks v. Duke Power Co.,* 190 S.C. 336, 362, 2 S.E.2d 825, 836 (1939) (citations omitted).

> Section 42–1–400 provides:
>
> When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

There is in fact case law precedent for substituting "employer" for "owner" in the statute. In our case of *Voss v. Ramco, Inc.,* 325 S.C. 560, 566, 482 S.E.2d 582, 585 (Ct.App.1997), *cert. granted,* October 10, 1997, in citing Section 42–1–400 we stated, "the Act also imposes liability on an employer or business owner for the payment of compensation benefits to a

worker not directly employed by the employer" (emphasis added). Further, "section 42–1–400 imposes liability on an upstream *employer* if the injured worker is an employee of the *subcontractor.*" *Id.* at 566–67, 482 S.E.2d at 585 (first emphasis added). *Cf. McDowell v. Stilley Plywood Co.,* 210 S.C. 173, 182, 41 S.E.2d 872, 876 (1947) (in construing predecessor to Section 42–1–400, holding "the word 'workman' is synonymous with the word 'employee,' and that the employees of a subcontractor engaged in the work, business or occupation of the 'owner' or principal contractor, are employees of the 'owner' within the intendment of the Act"); *Brittingham v. Williams Sign Erectors, Inc.,* 299 S.C. 259, 264, 384 S.E.2d 319, 322 (Ct.App.1989) (in determining that a statutory employer was immune from civil liability, the court held the term "employer" as used in Section 42–1–540 of the Act was intended to "include every person whom the Act makes responsible for compensation"). It is clear to us that the owner or upstream contractor referred to in Section 42–1–400, for purposes of the statutory employer doctrine, is in effect the employer of the injured employee.

The issue in contention does not appear to be the subject of many reported cases, but *A.G. Van Metre, Jr., Inc. v. Gandy,* 7 Va.App. 207, 372 S.E.2d 198 (1988), has similar facts, and we find its reasoning persuasive. Like our Act, the purpose of Virginia's statutory employer doctrine

is to bring within the operation of the Workers' Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employee engaged in that work every such owner, contractor or subcontractor above such employee.

*Id.* at 200–01, 41 S.E.2d 872. *See Blue Ridge Rural Elec. Coop. v. Byrd,* 238 F.2d 346 (4th Cir.1956), *rev'd on other grounds,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

Gandy's employer, a subcontractor of Van Metre, was uninsured. The Virginia Industrial Commission found Van Metre to be the primary statutory employer of Gandy and denied Van Metre indemnity from the Virginia Uninsured Employer's Fund. Van Metre, like appellants here, contended the commis-

sion erred in not ordering Van Metre be indemnified by the Fund. The Virginia court (referring to Van Metre as Gandy's "employer") concluded

> [t]o accept [Van Metre's] argument would, in effect, abrogate the purpose and meaning of the statutory employer statutes heretofore discussed. No statutory employer would ever be liable under similar facts. The commission held that because an award had been entered against an employer (Van Metre) who was insured, the provisions of Code § 65.1–149 [2] were inapplicable. We agree. *The statute makes no distinction between an immediate employer and a statutory employer in the ascending scale.* The purpose of the Fund is to insure that injured employees will be paid their compensation benefits even though their employer has breached his duty to secure compensation insurance. In most instances there will be no statutory employer and the employee's remedy will be against the Fund, as provided by the statute. But in those instances, as here, where a statutory employer is liable, we hold that the claimant has no right to an award against the Fund.

*Van Metre,* 372 S.E.2d at 202 (emphasis added). *See also Davis v. Goodin,* 639 S.W.2d 381, 382 (Ky.Ct.App.1982) ("The fund has only a secondary liability which comes into play only after execution is unsatisfied against those individuals who have primary responsibility.").

We also join the *Van Metre* court in its holding that "the legislative purpose in establishing the Fund was to provide compensation for claimants, not to indemnify statutory employers or their carriers." *Id. See also Rinaldi v. Workers' Compensation Appeals Bd.,* 199 Cal.App.3d 217, 244 Cal.Rptr. 637, 641 (1988) ("The Fund was created to ensure that workers employed by illegally uninsured employers are not deprived of workers' compensation benefits.").

---

2. Va.Code § 65.1–149 provides, in relevant part:

   After an award has been entered against an employer for compensation benefits under any provision of this Chapter, and upon a finding that the employer has failed to comply with the provisions of § 65.1–104.1, ... the Commission shall order the award to be paid from the Uninsured Employer's Fund.

## CONCLUSION

Sealand, as an insured statutory employer, may seek indemnity from the immediate employer for payments to a statutory employee, but may not seek indemnity from the S.C. Workers' Compensation Uninsured Employers' Fund. The decision of the circuit court is

**AFFIRMED.**

CONNOR and STILWELL, JJ., concur.