741 S.E.2d 538

Benjamin FORTNER, Claimant,

v.

THOMAS M. EVANS CONSTRUCTION AND DEVELOPMENT, LLC, Employer, and Thomas Evans Custom Building and Renovations, Inc., Employer, and South Carolina Workers' Compensation Uninsured Employers' Fund, and SUA Insurance Company, Inc., Carrier, Defendants,

Of Whom Benjamin Fortner and Thomas M. Evans Construction and Development, LLC, and Thomas Evans Custom Building and Renovations, Inc., Employers, and South Carolina Workers' Compensation Uninsured Employers' Fund are the Respondents,

and

SUA Insurance Company is the Appellant.

Appellate Case No. 2011–197246.

No. 5073.

Court of Appeals of South Carolina.

Heard Oct. 29, 2012.

Decided Jan. 16, 2013.

422

Edwin P. Martin, Jr., of Hedrick Gardner Kencheloe & Garofalo LLP, of Columbia, for Appellant SUA Insurance Company.

John S. Rodenberg, of Rodenberg Callihan Davis Lohr & Syracuse, LLC, of North Charleston, for Respondent Benjamin Fortner, III; R. Mark Davis and Andrew Luadzers, both of McAngus Goudelock & Courie, LLC, of Mount Pleasant, for Respondent Thomas M. Evans Construction & Development LLC; F. Reid Warder, Jr. and Kathryn R. Fiehrer, both of Wood & Warder, LLC, of Charleston, for Respondent Thomas Evans Custom Building & Renovations; and Timothy Blair Killen, of the South Carolina Second Injury Fund, of Columbia, for Respondent South Carolina Workers' Compensation Uninsured Employers' Fund.

LOCKEMY, J.

This action arose from injuries Benjamin Fortner, III, sustained while pressure washing a residential home on the Isle of Palms, South Carolina (Serenbetz property) on April 19, 2010. In this appeal from the Appellate Panel of the Workers' Compensation Commission (Appellate Panel), SUA Insurance Company (SUA) contends the Appellate Panel erred in finding Fortner was a statutory employee of Thomas

M. Evans Construction & Development, LLC (Evans Construction) at the time of his injuries. We affirm.

FACTS

From 2004 to 2006, Fortner worked for Evans Construction, owned by Thomas Evans, Jr. (Evans, Jr.). While Fortner was employed with Evans Construction, Thomas Evans, III (Evans, III), son of Evans, Jr., worked as an onsite supervisor for the company. Fortner left Evans Construction in 2006. In 2009, due to a downturn in the economy, Evans, III also left Evans Construction and began his own company, Thomas Evans Custom Building and Renovations, Inc. (Custom Building). Evans, Jr. owns approximately one percent in Custom Building, while Evans, III has an undetermined ownership interest in Evans Construction from which he would benefit financially.

Custom Building performs a large number of kitchen and bathroom renovations, whereas Evans Construction performs more homebuilding "from the ground up." Initially, Evans Construction allowed Custom Building to use its credit with different accounts, i.e., building materials, because Custom Building had not yet established credit. Evans Construction's accounting department kept a running tab of those expenses, and Custom Building paid down its tab after a job completion.

Further, Evans Construction occasionally used Custom Building's employees for a specific job, but not as permanent employees. When that occurred, the employee would continue on Custom Building's payroll, and Evans Construction credited Custom Building's tab.

While Evans, III was employed with Evans Construction, he secured a job on the Serenbetz property for the company, which consisted of a $600,000 makeover of the home. Evans Construction was paid upon job completion in July of 2009. Subsequently, in 2010, the Serenbetz property suffered a suspected power surge that caused the heating and air conditioner to malfunction and damaged the floors, walls, and cabinets. Evans, III's company, Custom Building, was then hired to repair the damage.

In March of 2010, Fortner took a position with Custom Building as a painting supervisor on the Serenbetz property. Two weeks into Fortner's employment with Custom Building

and the Friday before the accident, Evans, III asked Fortner to pressure wash the Serenbetz property because the owners were returning to town, and the home "needed ... to look immaculate for when the owners got back." Evans, III further requested that Fortner locate a pressure washer for the task. On Sunday, Fortner called and told Evans, III he could not find a pressure washer, and Evans, III asked Fortner to call him on Monday morning to remedy the situation. On Monday morning, Evans, III told Fortner to meet him at a pressure washer rental store. While at the store, Evans, III rented the pressure washer with Custom Building's credit card, and then helped Fortner load it onto a truck to carry back to the Serenbetz property. Fortner testified they unloaded the pressure washer once they reached the Serenbetz property, and then Evans, III walked him through the home to explain everything that needed to be fixed once he finished pressure washing. Evans, III disputed this fact and stated he never took Fortner inside to show him what needed to be fixed. However, they both agree Evans, III showed Fortner that the air conditioner cover needed a coat of paint and impressed upon Fortner the importance of "making sure that the house was clean the best that [he] could get it clean." After the walk-through, Evans, III left the Serenbetz property, and Fortner began pressure washing on the roof. While pressure washing, Fortner lost his balance and fell, sustaining injuries. A fellow worker called Evans, III to inform him of the accident and then called 911.

Evans, Jr. testified he spoke with Evans, III on either a Saturday or Sunday about hiring Fortner as a replacement supervisor because Evans Construction's supervisor had suffered a heart attack. Evans, Jr. claimed a change in employment occurred the morning of April 19, 2010. Evans, Jr. admitted the decision had not been discussed with Fortner before his accident occurred. Evans, Jr. further asserted that it was he, on behalf of Evans Construction, who asked Evans, III to power wash the Serenbetz property as a gesture of goodwill because Mr. Serenbetz was coming to town, and Evans, Jr. wanted to "look good." Evans Jr. explained it was more convenient for Evans, III to take care of the task because Evans, III was working at the Serenbetz property. Kelly Gabel, Evans Construction's office manager, confirmed

that Evans Construction's employees maintained properties through pressure washing them and performing lawn care services.

On the morning of the accident, Evans, Jr. spoke with Evans, III several times, and he alleged that at least one call was to confirm the pressure washing. Telephone records established that Evans, Jr. received calls from his son at 8:36 a.m. lasting about ten minutes, at 9 a.m. lasting about seven minutes, at 9:30 a.m. lasting about two minutes, at 9:32 a.m. lasting about one minute, and 9:48 lasting about five minutes. Evans, Jr. asserted he was not aware of Fortner's accident until around 10 a.m., when Evans, III called to inform him of what had occurred. Additionally, Evans, Jr. claimed he did not know Evans, III was not carrying workers' compensation insurance until a few days after Fortner's accident. Evans, III was unclear as to which phone call might have been the one informing Evans, Jr. of Fortner's accident. However, Evans, III testified Fortner normally started work around 8 a.m., and his fall probably occurred around 8:10 a.m.

Fortner believed he was working for Evans, III until two days after his accident when his wife informed him that Evans, III told her at the hospital Fortner had been switched to Evans Construction's payroll on the morning of his accident. Neither Evans, Jr. nor Evans, III personally spoke with Fortner to tell him about the change in employment. Fortner admitted Evans, III had spoken with him once before the accident regarding the possibility of working for both Custom Building and Evans Construction because the painting supervisor for Evans Construction had suffered a heart attack. Fortner was told his services might be necessary to "keep things going for both companies until they get someone to fill in for [the other supervisor]." However, Fortner claimed that was the only notification he received regarding a potential change in his employment status. Fortner also stated he would not have had any objections to working between the companies if that had been necessary. He testified it was common for workers in the construction industry to "bounce back and forth between companies" because they go where the work is located.

After Fortner's injuries, Evans, III, on behalf of Custom Building, issued two checks to assist Fortner during his unemployment. Evans, Jr. and Gabel claimed Evans Construction credited Custom Building's tab for the checks, explaining that because Evans, III knew how to contact Fortner, it was more convenient for Evans, III to give him the check.

At the hearing, the parties stipulated Fortner was entitled to workers' compensation benefits as a result of his injury. Fortner and SUA contended Fortner was employed by Custom Building at the time of his injury. Evans Construction, Workers' Compensation Uninsured Employers' Fund (UEF), and Custom Building all maintained Fortner was either employed directly by Evans Construction, or alternatively, Evans Construction was the statutory employer of Fortner at the time of his injury. The single commissioner found Fortner to be the most credible of the witnesses that testified, while Evans, Jr. and Benjamin Fortner, Jr., Fortner's father, were marginally credible. The commissioner found Evans, III was not credible at all. The commissioner concluded that unless Fortner "knew of and agreed to a new employer-employee relationship with [Evans Construction], replacing the one theretofore existing with [Custom Building], his rights under the Workers' Compensation Act [WCA] against his regular employer were unabridged." Thus, he ruled that Custom Building, or UEF if Custom Building was unable or unwilling to pay, was liable. While the commissioner denied the argument that Fortner was a direct employee of Evans Construction, he did not address the statutory employer argument in his final order.

Evans Construction, Custom Building, and UEF (collectively referred to as Respondents) filed applications for review with the Appellate Panel following the single commissioner's decision. The single issue before the Appellate Panel was whether Thomas Evans Custom Building and Renovation (Custom Building) or Evans Construction would be held liable for Fortner's injuries. The Appellate Panel determined the commissioner erred in failing to find that Fortner was a statutory employee of Evans Construction at the time of his accident, citing *Ost v. Integrated Prods.,* 296 S.C. 241, 371 S.E.2d 796 (1988). The Appellate Panel found Fortner was under the direction and control of Evans Construction at the

time he was injured because it was Evans, Jr.'s decision to have the home pressure washed. Further, because Evans, Jr. and Gabel testified that Evans Construction regularly performed pressure washing activities or contracted with others to perform the pressure washing, and Evans Construction owned its own pressure washing equipment, the Appellate Panel concluded Fortner was performing an activity within the general trade, business, or occupation of Evans Construction, the principal employer. It further found Fortner was performing an activity that was an integral part of the business because of the close business connection between the two companies, basing that finding largely on testimony from Evans, Jr. and Evans, III. The Appellate Panel explicitly adopted the single commissioner's findings of fact regarding the witnesses' credibility and amended the commissioner's order to find that Fortner was a statutory employee of Evans Construction pursuant to section 42–1–400 of the South Carolina Code (1985). SUA subsequently filed this appeal.

## STANDARD OF REVIEW

 "The determination of whether a worker is a statutory employee is jurisdictional and, therefore, the question on appeal is one of law." *Posey v. Proper Mold & Eng'g, Inc.*, 378 S.C. 210, 216, 661 S.E.2d 395, 398 (Ct.App.2008) (citing *Harrell v. Pineland Plantation, Ltd.*, 337 S.C. 313, 320, 523 S.E.2d 766, 769 (1999); *Glass v. Dow Chem. Co.*, 325 S.C. 198, 201–02, 482 S.E.2d 49, 51 (1997)). "As a result, this court has the power and duty to review the entire record and decide the jurisdictional facts in accord with its view of the preponderance of the evidence." *Id.* at 216, 661 S.E.2d at 399 (citing *Harrell*, 337 S.C. at 320, 523 S.E.2d at 769; *Glass*, 325 S.C. at 202, 482 S.E.2d at 51); *see also Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 7–10, 132 S.E.2d 18, 20–22 (1963), *overruled in part on other grounds, Sabb v. S.C. State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002) (holding the existence or absence of an employment relationship is a jurisdictional fact that the court must determine based on its review of all the evidence in the record). "Where the issue involves jurisdiction, the appellate court can take its own view of the preponderance of the evidence." *Posey*, 378 S.C. at 216–17, 661 S.E.2d at 399 (citing *Nelson v. Yellow Cab Co.*, 349 S.C. 589, 594, 564 S.E.2d 110, 112 (2002)). "It is South Carolina's policy to resolve

jurisdictional doubts in favor of the inclusion of employers and employees under the [WCA]." *Edens v. Bellini*, 359 S.C. 433, 440, 597 S.E.2d 863, 867 (Ct.App.2004).

## LAW/ANALYSIS

### Section 42–1–400: "Owner" and "Subcontract"

■ SUA first argues the Appellate Panel erred in applying the three-part test set forth in *Voss* without initially determining whether Evans Construction was an "owner" for purposes of the statute and whether there was a "subcontract" in place. We disagree. *See Voss v. Ramco, Inc.*, 325 S.C. 560, 568, 482 S.E.2d 582, 586 (Ct.App.1997).

The statutory employment section of the WCA provides:

When any person, in this section ... referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section ... referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42–1–400 (1985).

■ "Whatever the parties contract to call their relationship is not controlling in a statutory employment analysis." *Pineland*, 337 S.C. at 322, 523 S.E.2d at 770; *see* S.C.Code Ann. § 42–1–610 (1985) ("No contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve any employer, in whole or in part, of any obligation created by this Title except as otherwise expressly provided in this Title."); *see also Wilson v. Daniel Int'l Corp.*, 260 S.C. 548, 553, 197 S.E.2d 686, 688 (1973) (stating that the terminology used by the parties is not controlling of their relationship). "The term 'owner' as used in Section 42–1–400 is synonymous with 'principal contractor'." *Murray v. Aaron Mizell Trucking Co.*, 286 S.C. 351, 354, 334 S.E.2d 128, 130 (Ct.App.1985) (citing *Marchbanks v. Duke Power Co.*, 190 S.C. 336, 362–63, 2 S.E.2d 825 (1939)).

Despite concern over the Appellate Panel's credibility findings, the record contains indisputable evidence that Evans, Jr., on behalf of Evans Construction, requested Custom Building to pressure wash the Serenbetz property for the purpose of engendering goodwill with the Serenbetzes. Custom Building accepted the request and had Fortner complete the task. Essentially, although Fortner was not aware of it, he was pressure washing the Serenbetz property at the direction of Evans Construction. Custom Building paid Fortner for his hours spent pressure washing, and Evans Construction paid Custom Building by crediting its tab.

Evans, Jr. and Evans, III created a contractor-subcontractor relationship between Evans Construction and Evans Custom Building with the agreement to pressure wash the Serenbetz property. The preponderance of the evidence supports the Appellate Panel's finding that section 42–1–400 applied to these facts.

**Section 41–1–410**

SUA maintains that because the Appellate Panel used the term "contractor" and "owner" interchangeably, it implicated section 42–1–410 of the South Carolina Code (1985). We disagree.

As previously stated, the terms owner and contractor can be used interchangeably. *Mizell Trucking Co.*, 286 S.C. at 354, 334 S.E.2d at 130 (citing *Marchbanks*, 190 S.C. at 362–63, 2 S.E.2d at 836). Accordingly, the Appellate Panel's word usage does not necessarily implicate a particular statute, and it specifically based its decision on section 41–1–400.

***Voss* Three–Part Analysis**

SUA contends even if section 42–1–400 applied to these facts, the Appellate Panel erred in determining that Evans Construction was Fortner's statutory employer. We disagree.

To determine whether the work performed by a subcontractor is a part of the owner's business, this [c]ourt must consider whether (1) the activity of the subcontractor is an important part of the owner's trade or business; (2) the activity performed by the subcontractor is a necessary, essential, and integral part of the owner's business; or (3)

the identical activity performed by the subcontractor has been performed by employees of the owner.

*Voss,* 325 S.C. at 568, 482 S.E.2d at 586 (citing *Smith v. T.H. Snipes & Sons, Inc.,* 306 S.C. 289, 292, 411 S.E.2d 439, 440 (1991)). "If any one of these tests is satisfied, the injured worker is considered the statutory employee of the owner." *Id.* (citing *Riden v. Kemet Elecs. Corp.,* 313 S.C. 261, 263, 437 S.E.2d 156, 158 (Ct.App.1993)). "Any doubts as to a worker's status are to be resolved in favor of coverage under the [WCA]." *Id.* (citing *Riden,* 313 S.C. at 263–64, 437 S.E.2d at 158).

Evans, Jr. stated Evans Construction owned pressure washers, but it was more logical to rent one near the job site rather than to move one of the company's pressure washers forty miles for just one job. He and Gabel testified that Evans Construction's employees pressure wash properties on a consistent basis, the identical activity performed by Fortner. Evidence in the record established that the third prong of the *Voss* analysis was satisfied. Moreover, the purpose of having the Serenbetz property pressure washed was to engender goodwill. Evans, Jr. claimed maintaining goodwill was crucial to Evans Construction's business, satisfying the first prong of the *Voss* analysis.

The preponderance of the evidence supports a finding that at least the first and third prongs of the *Voss* test are fulfilled, and thus, Evans Construction was Fortner's statutory employer. Accordingly, we affirm the Appellate Panel.

**Public Policy**

 SUA maintains by upholding the Appellate Panel's decision that Evans Construction was Fortner's statutory employer, we would detrimentally expand the scope of the statutory employer doctrine. We disagree.

 The concept of statutory employment provides an exception to the general rule that coverage under the WCA requires the existence of an employer-employee relationship. *Posey v. Proper Mold & Eng'g, Inc.,* 378 S.C. 210, 217, 661 S.E.2d 395, 399 (Ct.App.2008); *see* § 42–1–410. "The statutory employee doctrine converts conceded non-employees into employees for purposes of the [WCA]. The rationale is to

prevent owners and contractors from subcontracting out their work to avoid liability for injuries incurred in the course of employment." *Glass v. Dow Chem. Co.,* 325 S.C. 198, 201 n. 1, 482 S.E.2d 49, 50 n. 1 (1997). "The effect of ... [statutory employment] provisions when brought into operation is to impose the absolute liability of an immediate employer upon the owner and/or general contractor although it was not in law the immediate employer of the injured workman." *Parker v. Williams & Madjanik, Inc.,* 275 S.C. 65, 72, 267 S.E.2d 524, 527–28 (1980).

██ "Due to the many different factual situations which arise, this [c]ourt recognizes that no easily applied formula can be laid down for the determination of whether or not work in a given case is a part of the general trade, business or occupation of the principal employer. Each case must be determined on its own facts." *Ost v. Integrated Prods., Inc.,* 296 S.C. 241, 244, 371 S.E.2d 796, 798 (1988). Our decision in this case will not detrimentally expand the scope of the statutory employment doctrine because we are simply judging this case on its own merits. Accordingly, we reject this argument and affirm the Appellate Panel.

**Remaining Arguments**

Evans Construction argues that even if it was not the statutory employer of Fortner on the date of the accident, Fortner was either a direct or lent employee of Evans Construction. Because we affirm the Appellate Panel's finding that Evans Construction is Fortner's statutory employer, it is not necessary to reach these issues. *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

**CONCLUSION**

We find the preponderance of the evidence supports a finding that Evans Construction was Fortner's statutory employer at the time of his injuries. For the foregoing reasons, the Appellate Panel's decision is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.