642 S.E.2d 632

Anthony HARDEE, Employee/Claimant,

v.

W.D. McDOWELL, Uninsured Employer, and S.E. Smith
Construction Co., Inc., Alleged Statutory Employer,

and

Companion Property & Casualty Insurance Company,
Carrier/Defendant/Appellants,

With the South Carolina Uninsured Employers'
Fund, Appearing/Respondents,

of whom W.D. McDowell is a Respondent,

S.E. Smith Construction Co., Inc., and Companion Property
& Casualty Insurance Co. are Appellants,

and

the South Carolina Uninsured Employers'
Fund is a Respondent.

No. 4206.

Court of Appeals of South Carolina.

Heard Jan. 9, 2007.

Decided Feb. 12, 2007.

Rehearing Denied March 22, 2007.

414

Weston Adams, III, of Columbia and Brian O'Keefe, of Charleston, for Appellants.

Terri M. Lynch, of Mt. Pleasant and W.D. McDowell, of Loris, for Respondents.

STILWELL, J.:

S.E. Smith Construction Co., Inc. and Companion Property & Casualty Insurance Co. (Smith Construction) appeal the order affirming the Workers' Compensation Commission's finding that they must provide coverage for injuries sustained by an employee of Smith Construction's subcontractor. We affirm.

## FACTS

Smith Construction, a general contractor, routinely subcontracted with W.D. McDowell (McDowell) for framing work. Because McDowell could not afford the lump sum payment to provide workers' compensation insurance for its employees, Smith Construction offered to pay the premium up front and deduct the insurance payments weekly from McDowell's pay. On March 11, 2002, McDowell presented Smith Construction with a certificate of insurance indicating coverage from January 30, 2002 to January 30, 2003.

During the spring and summer of 2002, McDowell worked on various jobs for Smith Construction. Smith Construction, relying on the certificate of insurance on file as of March 11, did not ask McDowell for proof of insurance on these jobs. In the summer of 2002, McDowell started construction of the Socastee library for Smith Construction.

On September 6, 2002, Anthony Hardee, an employee of McDowell, sustained an injury at the Socastee site. Several weeks later, McDowell discovered the insurer had canceled coverage on September 5, the day before Hardee's accident.

On January 16, 2003, Hardee filed a workers' compensation claim against Smith Construction and McDowell. Smith Construction admitted the injury but sought indemnification from the South Carolina Uninsured Employers' Fund (the Fund) pursuant to section 42–1–415(B) of the South Carolina Code.

After a hearing on Hardee's compensation claim, the single commissioner found, *inter alia,* neither McDowell nor Smith Construction was aware the policy had been canceled. Further, the single commissioner found although McDowell provided Smith Construction with proof of workers' compensation insurance for 2002, it did not request a certificate of insurance for the particular job in question. The single commissioner therefore concluded Smith Construction failed to comply with section 42–1–415 and, accordingly, found Smith Construction liable for Hardee's claim. On appeal to the commission, Smith Construction maintained because it had collected proof of insurance prior to McDowell being "engaged to perform work," per section 42–1–415(B), it was not liable for Hardee's injury. The commission and circuit court affirmed.

## STANDARD OF REVIEW

■ The question of whether Smith Construction met the requirements of section 42–1–415 is a mixed question of law and fact. There is a question of law in determining the meaning of the statute's phrase: "at the time the [subcontractor] was engaged to perform work." *See Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) (determining legislative intent is a matter of law); *Thompson v. Ford Motor Co.*, 200 S.C. 393, 431–32, 21 S.E.2d 34, 50 (1942) (interpretation of a statutory term is not a finding of fact). There is a question of fact regarding whether the work under construction at the time of the employee's injury was the continuation of previous work or a new job.

■■ "In a case raising a novel question of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court." *Sloan v. South Carolina Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 466–67, 636 S.E.2d 598, 605–06 (2006) (stating the appellate court is free to decide the question based on its consideration of law, public policy, and the court's sense of justice). Notwithstanding, this court will accord the most respectful consideration to the interpretation of a statute by the agency charged with its administration. *Bursey v. South Carolina Dep't of Health & Envtl. Control*, 369 S.C. 176, 186–87, 631 S.E.2d 899, 905 (2006).

As to questions of fact in workers' compensation actions, this court reviews factual findings of the commission under the substantial evidence standard and may reverse a factual finding only if the finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record or is affected by error of law. S.C.Code Ann. § 1–23–380(A)(5) (Supp.2006).

## LAW/ANALYSIS

Smith Construction argues the commission erred by requiring a contractor to collect proof of insurance from its subcontractor for each job the subcontractor performs. Smith Construction contends that a contractor complies with section 42–

1–415 by obtaining proof of insurance from its subcontractor once a year. We disagree.

Under section 42–1–415(A) a contractor may transfer liability to the Fund when its subcontractor's employee is injured if the contractor submitted "documentation to the commission that a . . . subcontractor has represented himself to a higher tier subcontractor, contractor, or project owner as having workers' compensation insurance at the time the . . . subcontractor was engaged to perform work." S.C.Code Ann. § 42–1–415(A) (Supp.2006).

Smith Construction, relying on this court's decision in *South Carolina Uninsured Employer's Fund v. House*, 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004), contends the statute is satisfied if the contractor obtains proof of insurance the first time it hires a subcontractor in any given year regardless of the number or variety of jobs the subcontractor performs for the contractor throughout the year. Hardee conversely argues *House* does not precisely address this issue and a common sense reading of the statute demands a contractor ask for proof of insurance at the beginning of each new job rather than once a year.

We agree with Hardee's interpretation of the statute. In *House*, a subcontractor, "[w]hen he was initially engaged to perform the work," presented the contractor with proof of workers' compensation coverage from June 5, 1997 to June 5, 1998. *House*, 360 S.C. at 469, 602 S.E.2d at 81. When the original policy expired, the subcontractor provided a certificate indicating continuing coverage. *Id.* at 469–70, 602 S.E.2d at 81. The policy's history indicated several cancellations and reinstatements for nonpayment of premiums until March of 1999 when the insurer sent the subcontractor a notice of cancellation for refusal to pay the renewal premium. *Id.* at 470, 602 S.E.2d at 81–82. The subcontractor failed to pay the premiums necessary to reinstate the policy and was refused coverage by another carrier but continued to verbally advise the contractor that it had workers' compensation coverage. *Id.* at 470, 602 S.E.2d at 82.

The issue presented in *House* was whether the contractor satisfied its obligation under section 42–1–415 when it requested a certificate of insurance at the beginning of the work or whether the contractor had a continuing duty to collect proof

of insurance throughout the term of the work. We found the contractor satisfied its burden under the statute by collecting proof of insurance "at the time the ... subcontractor was engaged to perform work." *Id.* at 471, 602 S.E.2d at 82 (quoting section 42–1–415(A)). Further, we found that under 42–1–415(C) the subcontractor had a duty to notify the contractor of any lapse in coverage. *Id.* at 472, 602 S.E.2d at 83. *House* does not address the situation presented here, where a contractor employs a subcontractor for a series of separate jobs in a single year. However, the court in *House* concluded: "The statute does not require a prime contractor to continue collecting proof of its subcontractor's insurance coverage after the subcontractor is *engaged to perform the work.*" *Id.* (emphasis added). Our reading of the *House* case leads us to conclude the work performed in *House* was on a continuous job rather than a series of separate jobs. In this case, the work performed at the time of the injury was at a new job site, the Socastee project. Accordingly, *House* does not control.

[4, 5] Turning to the statute, we find the plain language contemplates the contractor require proof of insurance for each job the subcontractor performs regardless of the number of jobs the subcontractor performs in a given year. To qualify for reimbursement under section 42–1–415, the contractor must collect proof of insurance at the time the subcontractor "is engaged to perform work." S.C.Code Ann. § 42–1–415(B) (Supp.2006). We find the phrase "engaged to perform work" refers to when a subcontractor begins work at a construction site. The statute is plain and unambiguous and, therefore, it is not our place to change the meaning of the statute. *See Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 891 (1995) (finding that if a statute's language is clear and unambiguous the rules of statutory construction are unnecessary and the court cannot impose another meaning). If the state legislature had intended for a contractor to collect documentation of insurance from a subcontractor once a year, it could have drafted the statute to reflect that intent. *See Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 413, 618 S.E.2d 909, 914 (2005) (considering legislature's options in wording a statute when interpreting the statute). We find some support from our sister state, North Carolina, in arriving at this

interpretation. *See generally Spoone v. Newsome Chevrolet–Buick,* 309 S.C. 432, 434, 424 S.E.2d 489, 490 (1992) (giving weight to North Carolina precedent in interpreting workers' compensation legislation); *Robertson v. Hagood Homes, Inc.,* 160 N.C.App. 137, 584 S.E.2d 871, 878 (2003) (interpreting the North Carolina statute requiring proof of insurance and concluding: "Having chosen voluntarily to sublet a series of individual contracts, [contractor was] required ... to obtain a certificate for each separate contract.").

■■ Having concluded the statute requires proof of insurance for each job, we review the factual findings of the commission under the substantial evidence standard. The single commissioner found, and the commission concurred, that neither McDowell nor Smith Construction was aware the policy lapsed and that, although McDowell provided Smith Construction with proof of workers' compensation insurance for 2002, it did not provide a certificate of insurance for the Socastee project. Accordingly, Smith Construction failed to comply with the statute. We find no error in these findings. We therefore agree with the commission that because Smith Construction failed to comply with the statutory provisions, it was not entitled to shift the burden of coverage to the Fund.

**AFFIRMED.**

GOOLSBY and SHORT, JJ., concur.