673 S.E.2d 813

Anthony HARDEE, Employee/Claimant,

v.

Harry D. McDOWELL, as Personal Representative of the Estate of W.D. McDowell, Uninsured Employer, and S.E. Smith Construction Co., Inc., Alleged Statutory Employer, and Companion Property and Casualty Insurance Company, Carrier/Defendant/Appellants, with the South Carolina Uninsured Employers' Fund, Appearing/Respondents,

of whom Harry D. McDowell, as Personal Representative of the Estate of W.D. McDowell is Respondent,

and

S.E. Smith Construction Co., Inc. and Companion Property and Casualty Insurance Co., are Petitioners,

and

the South Carolina Uninsured Employers' Fund is Respondent.

No. 26605.

Supreme Court of South Carolina.

Heard Jan. 7, 2009.

Decided Feb. 23, 2009.

Weston Adams, III, Brian G. O'Keefe, Jillian M. Benson, and Ashley B. Stratton, all of McAngus Goudelock & Courie, of Columbia, for Petitioners.

Latonya Dilligard Edwards, of Columbia; Harry D. McDowell, pro se, of Loris; and Terri Morrill Lynch, Matthew J. Story, and Margaret M. Urbanic, all of Clawson & Staubes, of Charleston, for Respondents.

Justice BEATTY.

We granted certiorari to review the decision in *Hardee v. McDowell*, 372 S.C. 413, 642 S.E.2d 632 (Ct.App.2007). In *Hardee*, the South Carolina Court of Appeals upheld the finding of the South Carolina Workers' Compensation Commission that a general contractor and its insurer, Smith Construction Co. and Companion Property & Casualty Insurance Co., could not transfer liability for a worker's injury to the South Carolina Uninsured Employers' Fund under section 42–1–415 of the South Carolina Code.[1] The Court of Appeals determined Smith Construction did not obtain proof of insurance from its subcontractor at the time the subcontractor was engaged to perform work as required by section 42–1–415. We granted the petition of Smith Construction and its insurer for certiorari and affirm as modified.

## I. FACTS

Smith Construction, a general contractor, hired W.D. McDowell as a subcontractor to perform framing and other work for its construction projects on several occasions. Because McDowell could not afford workers' compensation insurance for its

---

1. S.C.Code Ann. § 42–1–415 (Supp.2008).

employees, Smith Construction routinely paid the premium and then took weekly deductions from McDowell's pay for reimbursement.

On March 11, 2002, McDowell presented Smith Construction with a certificate of insurance indicating McDowell had coverage from January 30, 2002 to January 30, 2003. During the year, McDowell worked on various jobs for Smith Construction. Smith Construction, relying upon the earlier certificate, did not seek proof of insurance for any of these jobs.

In the summer of 2002, McDowell began working on the Socastee library project for Smith Construction. Smith Construction admittedly did not ask for proof of insurance for this job and had no representation from McDowell as to proof of insurance other than the earlier certificate that was in Smith Construction's file.

On September 6, 2002, Anthony Hardee, one of McDowell's employees, was totally and permanently disabled when he fell from scaffolding while working on the Socastee library project. The day before the accident, McDowell's insurance was cancelled. Neither Smith Construction nor McDowell was aware of the cancellation at the time of Hardee's accident.[2]

Hardee filed a workers' compensation claim. Smith Construction sought to transfer its liability as a statutory employer to the Fund under section 42–1–415. The workers' compensation hearing commissioner found Smith Construction, as the general contractor, was liable for paying Hardee's benefits and it was not allowed to shift liability to the Fund under section 42–1–415 because Smith Construction did not request or obtain proof of insurance from McDowell for the job in question—the Socastee library project.

The full Commission upheld the findings of the hearing commissioner and adopted the hearing commissioner's order in full. The circuit court affirmed. Upon further appeal, the Court of Appeals affirmed. *Hardee v. McDowell*, 372 S.C. 413, 642 S.E.2d 632 (Ct.App.2007). Smith Construction (and

---

**2.** Although Smith Construction provided funds for the insurance, the insurer performed an audit of McDowell and apparently determined that additional funds were due on the account and terminated coverage. McDowell, however, disputed that additional funds were due.

its insurer) petitioned for a writ of certiorari, which this Court granted.[3]

## II.  ISSUES

Smith Construction contends the Court of Appeals erred in affirming the full Commission's decision that section 42–1–415 requires a contractor to obtain proof of insurance from a subcontractor for each particular job for which the subcontractor is engaged to perform work.  It argues the case of *South Carolina Uninsured Employer's Fund v. House*, 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004) mandates that proof of insurance be obtained only at the time the subcontractor is first engaged to work and not for each particular job.  In the alternative, Smith Construction contends that, even if it obtained proof of insurance at the outset of the Socastee library job, it still would not have learned of the cancellation of McDowell's policy.

## III.  LAW/ANALYSIS

Under the statutory employment doctrine, a contractor may be held liable for work-related injuries to employees hired by a subcontractor.  *See* S.C.Code Ann. § 42–1–410 (1985) (stating a "contractor shall be liable to pay to any workman employed in the work [of a subcontractor] any compensation under this Title which he would have been liable to pay if that workman had been immediately employed by him"); *Miller v. Lawrence Robinson Trucking*, 333 S.C. 576, 580, 510 S.E.2d 431, 433 (Ct.App.1998) ("The concept of statutory employment is designed to protect the employee by assuring workers' compensation coverage by either the subcontractor, the general contractor, or the owner if the work is part of the owner's business.").

The Fund was "created [by the South Carolina Legislature] to ensure payment of workers' compensation benefits to injured employees whose employers have failed to acquire necessary coverage for employees...." S.C.Code Ann. § 42–7–200(A)(1) (Supp.2008).

---

**3.** Smith Construction shall include its insurer as a petitioner where appropriate.

Section 42–1–415 provides that a contractor may shift liability to the Fund if the contractor obtains adequate proof that the subcontractor had insurance coverage at the time the subcontractor "was engaged to perform work":

> (A) Notwithstanding any other provision of law, upon the submission of documentation to the [C]ommission that a contractor or subcontractor *has represented* himself to a higher tier subcontractor, contractor, or project owner as having workers' compensation insurance *at the time the contractor or subcontractor was engaged to perform work,* the higher tier subcontractor, contractor, or project owner must be relieved of any and all liability under this title except as specifically provided in this section.... The higher tier subcontractor, contractor, project owner, or his insurance carrier may petition the [C]ommission to transfer responsibility for continuing compensation to the Uninsured Employers' Fund....

> (B) To qualify for reimbursement under this section, the higher tier subcontractor, contractor, or project owner must collect documentation of insurance as provided in subsection (A) on a standard form acceptable to the [C]ommission. *The documentation must be collected at the time the contractor or subcontractor is engaged to perform work* and must be turned over to the [C]ommission at the time a claim is filed by the injured employee.

S.C.Code Ann. § 42–1–415(A)–(B) (Supp.2008) (emphasis added).

The issue in this case is at what point in time a contractor must obtain proof of insurance from a subcontractor. Section 42–1–415 provides that such proof must be obtained when the subcontractor is "engaged to perform work."

In the direct appeal of this case, the Court of Appeals first considered Smith Construction's argument that the Commission erred by requiring a contractor to collect proof of insurance from its subcontractor for each job the subcontractor performs. *Hardee,* 372 S.C. at 417, 642 S.E.2d at 635. The Court of Appeals noted that "Smith Construction contends that a contractor complies with section 42–1–415 by obtaining proof of insurance from its subcontractor once a year." *Id.* at 417–18, 642 S.E.2d at 635.

Smith Construction, relying on the case of *South Carolina Uninsured Employer's Fund v. House,* 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004), argued section 42–1–415 is satisfied if the contractor obtains proof of insurance the first time it hires a subcontractor in any given year, regardless of the number of jobs the subcontractor performs. *Id.* at 418, 642 S.E.2d at 635. In contrast, Hardee argued that "a common sense reading of the statute" requires a contractor to demand proof of insurance at the beginning of each new job rather than once a year. *Id.*

The Court of Appeals held the *House* case was not controlling as the issue presented in *House* was whether a contractor had a *continuing* duty to collect proof of insurance throughout the term of the work where there is one continuous job, as opposed to a series of separate jobs. *Id.* at 418–19, 642 S.E.2d at 635. The Court of Appeals stated the issue in the present appeal, however, concerns what is meant by "engaged to perform work" in circumstances "where a contractor employs a subcontractor for a series of separate jobs in a single year." *Id.* at 419, 642 S.E.2d at 635.

Turning to the language of the statute, the Court of Appeals found "the plain language [of section 42–1–415] contemplates the contractor require proof of insurance for each job the subcontractor performs regardless of the number of jobs the subcontractor performs in a given year." *Id.* at 419, 642 S.E.2d at 635–36. Noting the statute requires a contractor to collect proof of insurance at the time the subcontractor is "engaged to perform work," the court concluded: "We find the phrase 'engaged to perform work' refers to when a subcontractor begins work at a construction site. The statute is plain and unambiguous and, therefore, it is not our place to change the meaning of the statute." *Id.* at 419, 642 S.E.2d at 636. The Court of Appeals held that, because Smith Construction did not seek proof of insurance from its subcontractor before it began the Socastee library project, that it was not entitled to transfer liability for Hardee's injury to the Fund. *Id.* at 420, 642 S.E.2d at 636.

■ Upon certiorari to this Court, Smith Construction contends the Court of Appeals erred in holding the phrase "engaged to perform work" requires proof of insurance for

each job. Smith Construction asserts such a view is "strict and narrow" and "places a heavy burden on contractors and is inconsistent with the legislative purpose of the statute." Smith Construction argues section 42–1–415 "requires the contractor to obtain proof of insurance at one point in time: at the first engagement of the subcontractor. At most, section 42–1–415 requires a contractor to obtain proof of insurance on a yearly basis." In contrast, the Fund maintains that the phrase "engaged to perform work" logically "refers to each job upon which a subcontractor contracts with a contractor for its performance."

Both sides cite the case of *South Carolina Uninsured Employer's Fund v. House,* 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004). In *House,* a general contractor verified that a subcontractor had insurance at the time the subcontractor was hired. *Id.* at 469, 602 S.E.2d at 81. Later, one of the subcontractor's employees was injured, but by that time the subcontractor no longer had insurance coverage. *Id.* Prior to the injury, the subcontractor's insurance had been terminated and reinstated several times before it was finally cancelled. *Id.* at 470, 602 S.E.2d at 81–82.

The Court of Appeals in *House* agreed with the general contractor that section 42–1–415 does not "require a higher-tier contractor to continue to collect proof of insurance coverage from its subcontractor after *originally collecting documentation at the time of hire.*" *Id.* at 471, 602 S.E.2d at 82 (emphasis added). The court stated it was "loath to read such a requirement into a statute that otherwise contains such straightforward language." *Id.* at 472, 602 S.E.2d at 83. The court explained that the use of the word "originally" in subsection (C) of section 42–1–415, which provides it is fraud to fail to notify the contractor who "originally" was provided documentation of coverage of a lapse in such coverage, "lends support to the reasoning that the information given at the inception of the engagement is the controlling factor...." *Id.* (citing S.C.Code Ann. § 42–1–415(C)). We denied certiorari in *House.*

*House* stands for the proposition that a contractor does not have a continuing duty to check the validity of the subcontractor's insurance status after the subcontractor is "engaged to

perform work."[4] *House,* however, did not clearly define the meaning of the phrase "engaged to perform work." The Court of Appeals attempted to clarify the phrase in its review in this case. We find the phrase needs further clarification.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 739 (Ct.App.2001). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Id.* "Where the statute's language is plain and unambiguous, and conveys a definite meaning, the rules of statutory construction are not needed and the court has no right to impose another meaning." *Id.* at 122, 542 S.E.2d at 739–40. "What a legislature says in the text of a statute is considered the best evidence of legislative intent or will." *Id.* at 122, 542 S.E.2d at 740. "Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.*

Based on the express language of the statute, we hold the phrase "engaged to perform work" means each time a subcontractor is actually *hired* to perform work. Thus, if a contractor enters into a contract to hire a subcontractor for one job in January and then enters into another contract to hire the subcontractor for a second job in February, the contractor should verify that the subcontractor still has insurance coverage at the time of the February hiring.[5] This interpretation comports with the usual understanding of "to engage" someone for employment. *See Black's Law Dictionary* 570 (8th ed.2004) (defining "engage" as "[t]o employ"); *id.* at 748 (defining "hire" as "[t]o engage the labor or services of another for wages or other payment"); *see also* 1 *Funk & Wagnalls Standard Dictionary* 420 (1974) (defining "engage" as "to bind by a promise" or "to hire").

---

**4.** *House* involved a contract to hire the subcontractor for several jobs; thus, there was only one contract and one point of hire.

**5.** To the extent that *South Carolina Uninsured Employer's Fund v. House,* 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004) is inconsistent with our decision today, it is not good law.

■ In the current appeal, although Smith Construction checked for proof of insurance from McDowell at one point in early 2002, it did not check for proof of insurance at the time it actually *hired* McDowell for the Socastee library project in the summer of 2002; rather, it relied upon the documentation it had received earlier in the year.[6] Because coverage can lapse, Smith Construction should have verified coverage at the time McDowell was hired to do the Socastee library project in order to fall under the protection of the statute.

Although Smith Construction argues it would violate public policy to not allow it to transfer liability to the Fund, we discern no public policy violation that would be created by requiring Smith Construction to comply with the express terms of the statute. It is up to the South Carolina Legislature to change the statute if it intends a different interpretation; further, the legislature could have expressly provided that contractors could verify coverage once per year or some time period other than each time the subcontractor was engaged to perform work.

Consequently, we affirm the Court of Appeals' determination that Smith Construction is not entitled to transfer liability to the Fund because it did not seek proof of insurance when McDowell was engaged to perform the work on the Socastee library project. There is one sentence in the *Hardee* opinion, however, that states "engaged to perform work" refers to the time the subcontractor actually begins work on a project. Because this date may vary from the date of hire, we modify the opinion to the extent it conflicts with the definition above.

Smith Construction finally argues that verifying insurance at the time the Socastee library project began would not have mattered in this case because the subcontractor's insurance was not cancelled until after the project started. While it is true that a check at that time would not have shown a lack of coverage, we agree with the Fund that this argument ultimately fails on its merits. If Smith Construction had obtained a certificate of insurance from McDowell at the time McDowell

6. S.E. Smith, of Smith Construction, testified that he hired McDowell from job to job, and that he did not request a certificate of insurance for each job. Rather, he asked for it earlier in the year and then kept the certificate of insurance on file for the year.

was hired for the project and then the coverage was terminated unbeknownst to the parties, Smith Construction would have been entitled to transfer liability to the Fund and the purpose of the statute would have been served.

## IV.  CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is **AFFIRMED AS MODIFIED.**

TOAL, C.J., WALLER, PLEICONES and KITTREDGE, JJ., concur.