689 S.E.2d 638

**Gene Richard HUGHES, Jr., Respondent,**

v.

**WESTERN CAROLINA REGIONAL SEWER AUTHORITY, Appellant.**

No. 4625.

Court of Appeals of South Carolina.

Heard May 27, 2009.
Decided Oct. 22, 2009.
Withdrawn, Substituted, and Refiled on Feb. 9, 2010.

642

K. Lindsay Terrell, of Greenville, for Appellant.

David Alexander and Manning Y. Culbertson, both of Greenville, for Respondent.

THOMAS, J.

In this tort action, Western Carolina Regional Sewer Authority (WCRSA) appeals (1) the trial court's denial of motions for directed verdict and judgment notwithstanding the verdict, based on an alleged lack of proximate cause; (2) the trial court's instruction to the jury; and (3) the trial court's denial of a motion to set-off the verdict by the amount the plaintiff received in settling with a negligent third party. We affirm in part, reverse in part, and remand.

## FACTS

In December 2005, Gene Richard Hughes, Jr. was injured in an automobile accident consisting of two separate collisions. A WCRSA employee, Timothy Moser, caused the initial collision, which left Hughes uninjured but caused his vehicle to become stopped in an intersection. Roughly ten minutes after this initial collision, a third driver, James Coker, while drunk, negligently drove through the intersection, collided with Hughes, and caused him extensive injury.

On the night of the accident, an ice storm caused widespread power outages in Greenville County. In order to keep the sewer pumps running, WCRSA charged employees Timothy Moser and Benjie Burns with delivering fuel to emergency generators. WCRSA provided Moser and Burns with a Ford F350 pickup truck temporarily outfitted with a two-hundred-gallon, diesel-fuel tank. While making a delivery, Moser approached a four-way intersection where the power outage had caused the traffic signals to become disabled. At the same time, Hughes, after having made a complete stop at the intersection, made a left turn in front of Moser's lane of travel. Moser failed to stop at the intersection and collided with Hughes's vehicle. The collision caused Moser's vehicle to proceed a short distance through the intersection and come to a rest on the median. Hughes's vehicle came to a stop in the intersection.

Although Hughes stated he was "shaken up" as result of the collision, neither he nor his passenger was injured. Because the traffic signals and street lights were out, a witness to the accident parked her vehicle with its headlights pointed to illuminate Hughes's vehicle stopped in the intersection. During the minutes immediately following the accident, Hughes remained in the intersection outside of his vehicle.

Approximately ten minutes after the initial accident, Coker drove through the intersection, striking Hughes and his vehicle. Coker was intoxicated and driving a vehicle owned by his employer, Operator's Unlimited, Inc. As a result of this second collision, Hughes sustained extensive injuries to his leg. Coker later pled guilty to his second conviction for driving under the influence and admitted responsibility for the second collision.

Hughes brought suit against WCRSA and Coker.[1] During trial, Hughes entered a settlement agreement and covenant not to execute with Coker. WCRSA unsuccessfully moved the court for a directed verdict. Over WCRSA's objection, the trial court instructed the jury on various statutes dealing with WCRSA's alleged duty to carry emergency signaling devices. The jury returned a verdict of $225,000 for Hughes. The trial court denied WCRSA's motions for judgment notwithstanding the verdict (JNOV) and to have the verdict off-set or reduced by the $80,000 Hughes received from the settlement with Coker. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in denying Hughes's motions for directed verdict and JNOV?

II. Did the trial court err by instructing the jury on sections 56–5–5060 to –5100 of the South Carolina Code (2006)?

III. Did the trial court err in failing to set-off or reduce the verdict entered against WCRSA by the amount Hughes received from Coker?

## LAW/ANALYSIS

Because we find it dispositive of this matter, it is only necessary that we address whether the trial court erred in instructing the jury. WCRSA alleges the trial court erred in instructing the jury on sections 56–5–5060 to –5100 of the South Carolina Code (2006).[2] We agree.

WCRSA's alleged error pertains primarily to instructing the jury on (1) section 56–5–5060, requiring, inter alia, "motor trucks" to carry flares or reflective devices and (2) section 56–5–5070 of the South Carolina Code (2006), which requires a

---

1. Hughes also brought suit against Moser individually and Coker's employer, Operator's Unlimited, Inc.; however, these parties were dismissed.

2. These sections provide generally that certain vehicles are required to carry various warning, lighted, or reflective signals, to be employed in case the vehicle becomes disabled.

vehicle transporting "inflammable liquids" to carry reflective devices.[3]

This court will not reverse the decision of the trial court as to particular jury instructions absent an abuse of discretion. *Cole v. Raut,* 378 S.C. 398, 405, 663 S.E.2d 30, 33 (2008); *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). A trial court abuses its discretion when the ruling is not supported by the evidence or is based on an error of law. *Clark,* 339 S.C. at 389, 529 S.E.2d at 539. However, an erroneous jury instruction is not reversible error unless it causes prejudice to the appealing party. *Raut,* 378 S.C. at 405, 663 S.E.2d at 33; *Ellison v. Simmons,* 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961).

When interpreting a statute, the "cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hardee v. McDowell,* 381 S.C. 445, 453, 673 S.E.2d 813, 817 (2009); *Bayle v. S.C. Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 739 (Ct.App.2001). "A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Ga.–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003).

When confronted with an undefined term, the court must interpret it in accordance with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000); *State v. Hudson,* 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). However, this court will consider the language of the particular clause in which the term appears and also its meaning in conjunction with the purpose of the whole statute. *See Hinton v. S.C. Dep't of*

---

3. The various other sections on which the trial court instructed the jury deal specifically with how and where to set the specified warning devices and provide in pertinent part:

 Whenever any motor truck, passenger bus, truck tractor, trailer, semitrailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway, except as provided in § 56–5–5100.

 S.C.Code Ann. § 56–5–5090 (2006).

*Prob., Parole & Pardon Servs.*, 357 S.C. 327, 332–33, 592 S.E.2d 335, 338 (Ct.App.2004) ("Terms must be construed in context and their meaning determined by looking at the other terms used in the statute."). Statutes must be read as a whole and sections that are part of the same statutory scheme must be construed together. *Higgins v. State*, 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992); *Hinton*, 357 S.C. at 332–33, 592 S.E.2d at 338. Further, the maxim *expressio unius est exclusion alerius* provides that the expression of one thing implies the exclusion of another or its alternative. *State v. Leopard*, 349 S.C. 467, 473, 563 S.E.2d 342, 345 (Ct.App.2002).

### A. Section 56–5–5060

■ Section 56–5–5060 provides: "No person shall operate any motor truck, passenger bus or truck tractor upon any highway outside of the corporate limits of municipalities at any time from a half hour after sunset to half hour before sunrise unless there shall be carried in such vehicle" a specified quantity of signaling devices, flares, lanterns, or red-burning fuses.

The applicability of this statute hinges upon whether WCRSA's vehicle is a "motor truck." This chapter of the Code does not define the term "motor truck"; however, the term "truck" is defined as "[e]very motor vehicle designed, used or maintained primarily for the transportation of property." S.C.Code Ann. § 56–5–200 (2006). WCRSA argues the trial court erred in interpreting motor truck to be synonymous with the defined term truck. We agree.

In this case, when addressing whether truck and motor truck were synonymous, the trial court held because "there is no distinction between truck and motor truck in the definition section, I don't know how else to interpret it, except to think that they must be one in the same." However, a review of the statute as a whole, as well as reading the term motor truck in context with the remainder of the statute, does not support the trial court's interpretation.

In addition to the section in question, the term motor truck appears in section 56–5–4150 of the South Carolina Code (2006), providing in pertinent part:

A private motor truck or truck tractor of more than twenty-six thousand pounds gross weight and a for-hire motor

truck or truck tractor must have the name of the registered owner or lessor on the side clearly distinguishable at a distance of fifty feet. These provisions do not apply to two-axle straight trucks hauling raw farm and forestry products.

As the legislature specifically defines the term truck and clearly employs the term truck in other sections of the statute, the maxim *expressio unius est exclusion alerius* suggests motor truck and truck are not synonymous. *See Leopard,* 349 S.C. at 473, 563 S.E.2d at 345 (providing that the expression of one thing implies the exclusion of another). Had the legislature intended section 56–5–5060 to encompass trucks, we must surmise the drafters would not have elected to employ the term motor truck.[4] Moreover, considering the practices of statutory construction demonstrate the two terms are not to be construed as synonymous, motor truck must be given its plain and ordinary meaning. *See Branch,* 340 S.C. at 410, 532 S.E.2d at 292 (stating that terms must be given their natural and customary meanings). Naturally, the addition of the adjective motor qualifies the term to a narrower class of vehicles than merely a truck. The common meaning of motor truck is an automotive truck used especially for the transportation of goods. *See Merriam–Webster English Dictionary* 760, 466 (10th ed. 1993) (defining motor truck as a vehicle used for the transportation of freight, and defining freight as goods to be shipped). Further, the term motor truck appears in sections applicable to larger load-bearing and load-towing vehicles suggesting that a motor truck is a truck for the purposes of transporting freight being larger in size or weight than that of a common pickup truck, such as the WCRSA vehicle here. Accordingly, section 56–5–5060 does not require WCRSA to carry flares or reflective devices.

## B. Section 56–5–5070

 Section 56–5–5070 provides:

No person shall operate at the time and under the conditions stated in § 56–5–5060 any motor vehicle used in the transportation of inflammable liquids in bulk or transporting compressed inflammable gases unless there shall be carried

---

4. The term motor truck is used only four times in the South Carolina Code. *See* S.C.Code Ann. §§ 12–36–2570, 56–5–4150, 56–5–5060, 56–5–5090 (2006).

in such vehicle three red electric lanterns meeting the requirements stated in § 56–5–5060, and there shall not be carried in any such vehicle any flare, fuses or signal produced by a flame.

Whether section 56–5–5070 imposes a duty on WCRSA to carry warning devices hinges upon the interpretation of the term "inflammable liquid." This chapter of the Code does not define the term inflammable liquid; however, it does define the term "flammable liquid" as "any liquid which has a flash point of 70° F., or less, as determined by a Tagliabue or equivalent closed-cup test device." S.C.Code Ann. § 56–5–350 (2006). The general provisions of statutory construction would mandate that when the legislature employs a term other than one specifically defined, the implicit intent is that the undefined term has a different meaning. *Leopard,* 349 S.C. at 473, 563 S.E.2d at 345 (providing that the expression of one thing implies the exclusion of another). However, of paramount significance in this situation is that the defined term—flammable liquid—is used *nowhere* in this chapter outside of the definition section. Rather, the only similar term employed is inflammable liquid. We remain acutely mindful that the legislature employed different terms; however, the common definition of inflammable is flammable. *See Merriam–Webster English Dictionary* 598 (10th ed. 1993) (defining inflammable as flammable); *see also Branch,* 340 S.C. at 409–10, 532 S.E.2d at 292 (stating that terms must be given their natural and customary meanings); *Ga.–Carolina Bail Bonds,* 354 S.C. at 22, 579 S.E.2d at 336 ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered from the language used ... [and t]he legislature's intent should be ascertained primarily from the plain language of the statute."). Thus, in order to construe the statute to be consistent and give the terms their natural and common meanings, we look to the legislative definition of flammable.

Because we interpret inflammable and flammable to be synonymous, section 56–5–5070 applies only to vehicles that carry liquids with a flash point of seventy degrees Fahrenheit or lower, in bulk. At trial, WCRSA inquired as to the existence of evidence that the liquid at issue, diesel-fuel, fell within the ambit of the statute. To this, the trial court simply replied it was a "reasonable inference." However, upon re-

view of the record, we find no evidence to indicate the diesel-fuel being transported by WCRSA was actually a flammable or inflammable liquid. Notwithstanding that the truck in this case is not one described by section 56–5–5060, the trial court's assumption that the carrying of diesel-fuel implicated section 56–5–5070 is unsupported by the evidence and was therefore error.

As the trial court's erroneous instructions could have led the jury to infer WCRSA had a duty to carry and use warning devices, the instructions had a reasonable chance of influencing the jury's verdict and prejudicing WCRSA. Therefore, the trial court's instructions amount to reversible error.[5] *See Raut,* 378 S.C. at 405, 663 S.E.2d at 33 (stating that improper jury instruction is not reversible error unless it causes prejudice to the appealing party).

## CONCLUSION

Accordingly, the ruling of the trial court is **REVERSED and REMANDED.**

HEARN, C.J., and KONDUROS, J., concur.

---

**5.** In light of this decision, we decline to address the remaining issue on appeal. *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive); *Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (holding the appellate court need not address all issues when decision on a prior issue is dispositive).