**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Samuel Rose, Claimant,

v.

JJS Trucking and Chris Thompson Services (Statutory Employer), Employer,

and

Bridgefield Casualty Insurance (Carrier for Statutory Employer) and SC Uninsured Employers' Fund, Carriers, Defendants,

Of which Chris Thompson Services and Bridgefield Casualty Insurance are the Appellants, and South Carolina Uninsured Employers' Fund is the Respondent.

Appellate Case No. 2024-000533

---

Appeal From The Workers' Compensation Commission

---

Unpublished Opinion No. 2026-UP-135
Heard November 4, 2025 – Filed March 25, 2026

---

**REVERSED**

---

Kirsten Leslie Barr, of Trask & Howell, LLC, of Mt. Pleasant, for Appellants.

Matthew Joseph Story, of Clawson & Staubes, LLC, of Charleston, for Respondent.

_____

**PER CURIAM:** Chris Thompson Services, LLC (Thompson) and its insurance carrier, Bridgefield Casualty Insurance, appeal an order from the Appellate Panel of the Workers' Compensation Commission denying their request to transfer liability from Thompson to the Uninsured Employers' Fund (UEF). We reverse.

## I. BACKGROUND

Thompson is a general contractor that hired subcontractor JJS Trucking, Inc. (JJS) to transport woodchips from a lumber mill in Summerville to a paper mill in Charleston. JJS's drivers would perform the same job each workday, starting when the Summerville plant opened and ending when it closed. Thompson required JJS to provide proof of its workers' compensation insurance coverage annually.

In October of 2010, Swamp Fox Agency, Inc. (Swamp Fox) provided Thompson with proof of JJS's workers' compensation insurance in the form of an ACORD "Certificate of Liability Insurance" form. The ACORD form shows the "producer" as Swamp Fox and details JJS's automobile liability insurance with Tower Insurance Company of New York and its workers' compensation coverage with Travelers Insurance (Travelers). The form further shows a workers' compensation policy was in effect for the policy period of October 8, 2010, to October 9, 2011, and details the coverage amounts. In the box entitled "policy number" the word "binder" appears in place of the policy number. At the bottom of the form, there is a box entitled "Description of operations/locations/vehicles/exclusions added by endorsement/special provisions." This box remained blank. Upon receipt of the ACORD form, Thompson's owner Chris Thompson called the insurance agent at Swamp Fox to verify JJS's coverage and the agent confirmed the workers compensation policy was "good to go."

Driver Samuel Rose (Claimant) was injured in a motor vehicle accident on August 10, 2011, while driving his work truck. Claimant sought workers' compensation benefits from both JJS and Thompson. In response, Thompson sought to transfer liability to the UEF pursuant to Section 42-1-415 of the South Carolina Code (2015). Thompson submitted JJS's ACORD form to the commission along with its

answer.  JJS failed to pay its workers' compensation insurance premiums and the Travelers policy lapsed prior to Claimant's accident.  As a result, Thompson remained liable to pay Claimant's benefits as the higher tier contractor.

On August 23, 2012, the single commissioner ruled Claimant was entitled to temporary total disability benefits and Thompson's request to transfer responsibility to the UEF was not ripe for adjudication.  Thompson appealed the decision to the full panel, which affirmed.  Thompson then appealed to this court, which dismissed the appeal as interlocutory on January 28, 2015.[1]  Following a tortured procedural history not relevant to this appeal, the commission ordered Thompson to pay for Claimant's medical treatment and temporary total disability benefits, and this court affirmed on appeal.[2]  The month following this court's decision, Thompson again petitioned the commission to transfer liability to the UEF, arguing it had paid Claimant the statutory maximum of 500 weeks of benefits.

On May 15, 2023, the single commissioner found Thompson was not entitled to transfer liability to the UEF.  The full panel affirmed the single commissioner's order, largely incorporating the single commissioner's findings of fact and conclusions of law.  This appeal followed.

## II.    STANDARD OF REVIEW

When reviewing an appeal from the workers' compensation commission, the appellate court "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact."  S.C. Code Ann. § 1-23-380(5) (Supp. 2025).  However, the reviewing court may reverse when a decision is predicated on an error of law.  *Therrell v. Jerry's Inc.*, 370 S.C. 22, 25, 633 S.E.2d 893, 894–95 (2006).  The interpretation of a statute is a question of law.  *Hopper v. Terry Hunt Constr.*, 383 S.C. 310, 314, 680 S.E.2d 1, 3 (2009).

## III.   DISCUSSION

"Generally, a higher tier contractor is considered the statutory-employer of an employee of a lower tier contractor, and thus, the high tier contractor remains liable to pay benefits to an employee if he sustains a compensable injury."  *Id.* at

---

[1] *Rose v. JJS Trucking, LLC*, 411 S.C. 366, 768 S.E.2d 412 (Ct. App. 2015).
[2] *Rose v. JJS Trucking, LLC*, Op. No. 2022-UP-325 (S.C. Ct. App. filed Aug. 10, 2022).

314, 680 S.E.2d at 3 (citing S.C. Code Ann. § 42-1-400 (2015)). "The concept of statutory employment is designed to protect the employee by assuring workers' compensation coverage by either the subcontractor, the general contractor, or the owner if the work is part of the owner's business." *Miller v. Lawrence Robinson Trucking,* 333 S.C. 576, 580, 510 S.E.2d 431, 433 (Ct. App. 1998).

Section 42-1-415 of the South Carolina Code provides a narrow exception to the general contractor's liability. A contractor may shift liability to the UEF if the contractor obtained adequate proof that the subcontractor had insurance coverage at the time the subcontractor was engaged to perform the work. S.C. Code Ann. § 42-1-415(A) (2015). "[T]he higher tier contractor . . . shall in the first instance pay all benefits due [to the employee]." *Id*. The higher tier contractor may then petition to transfer liability to the UEF. *Id*. "Liability may only be transferred from the higher tier contractor to the [UEF] after the higher tier contractor has properly documented the lower tier contractor's claim that it retains workers' compensation insurance." *Hopper*, 383 S.C. at 315, 680 S.E.2d at 3.

The documentation of insurance must be on "a standard form acceptable to the commission." S.C. Code Ann. § 42-1-415(B) (2015). In regulations promulgated in conjunction with section 42-1-415, the workers' compensation commission clarified that "[t]he ACORD Form 25-S, Certificate of Insurance, as issued by the insurance carrier for the insured, is acceptable documentation of insurance, provided the Certificate of Insurance indicates a valid South Carolina address for the insured, is dated, signed and issued by an authorized representative of the insurance carrier for the insured." S.C. Reg. 67-415(A)(2) (2010). Out-of-state employers may also use an ACORD form to verify workers' compensation coverage "provided the authorized representative of the insurance carrier for the insured affirms the following in an accompanying statement: South Carolina is a named state in section 3A or 3C of the declaration page of the insured's policy." *Id.*

A. <u>Documentation Requirements</u>

The commission found that the ACORD form provided by Appellant was insufficient on several grounds. First, the commission found that because there was no written contract between Thompson and JJS, and because the form did not note "where coverage applies or to what job entity," each transaction between Thompson and JJS would constitute a new job requiring a certificate of insurance. In other words, the commission found Thompson was required to verify insurance coverage every time JJS transported materials. Second, the commission found that

the form was insufficient because it was blank as to the description and location of operations and showed "binder" in place of a policy number.  The UEF argues the court's holdings in *Hopper* and in *Hardee v. McDowell*, 381 S.C. 445, 673 S.E.2d 813 (2009), support the commission's findings.

In *Hardee*, W.D. McDowell was contracted by Smith Construction to work on a library project.  *Id*. at 447–48, 673 S.E.2d at 814–15.  The parties had worked together on a previous project, at which time McDowell provided Smith with a certificate of insurance.  *Id*. at 448, 673 S.E.2d at 814.  Smith did not seek updated proof of coverage prior to the library project but instead relied upon the earlier certificate.  *Id*. at 448, 673 S.E.2d at 814–15.  Unbeknownst to Smith, McDowell's insurance was cancelled the day prior to the employee's injury.  *Id*. at 448, 673 S.E.2d at 815.  The court held that the language in section 42-1-415(A) requiring proof of insurance at the time the contractor is "'engaged to perform work' means each time the subcontractor is actually *hired* to perform work."  *Id*. at 453, 673 S.E.2d at 817.  "Thus, if a contractor enters into a contract . . . in January and then enters into another contract to hire the subcontractor for a second job in February, the contractor should verify that the subcontractor still has insurance coverage at the time of the February hiring."  *Id*.  Because Smith did not check for insurance at the start of the library project, Smith was not eligible to transfer liability to the UEF.  *Id*. at 454, 673 S.E.2d at 818.

The UEF relies on the court's holding in *Hardee* to argue that Thompson was required to verify JJS's insurance before each load of wood chips was transported.  We find, however, the present case is factually distinguishable from *Hardee*.  In this case, the uncontroverted evidence showed that Thompson hired JJS to work exclusively on one job—to transport wood chips from the Summerville lumber mill to the Charleston paper mill daily—and that JJS performed the same functions at the same two locations during the entirety of the parties' relationship.  Thompson required insurance documentation from JJS at the time of hire and thereafter on an annual basis and called the insurance agency to verify coverage upon receipt of the ACORD form.  We find Thompson's verification of coverage at the beginning of the parties' relationship and annually thereafter met the statute's requirement of verification "at the time the subcontractor was engaged to perform work."  *See Hardee*, 381 S.C. at 453, 673 S.E.2d at 817 (holding that the phrase "'engaged to perform work' means each time a subcontractor is actually *hired* to perform work").

In *Hopper*, Terry Hunt Construction (Hunt) was the subcontractor contracted by Kajima USA, Inc. (Kajima).  383 S.C. at 313, 680 S.E.2d at 2.  The project took

place in South Carolina, but Hunt and Kajima were based in Georgia. *Hopper v. Terry Hunt Const.*, 373 S.C. 475, 478, 646 S.E.2d 162, 164 (Ct. App. 2007). During a previous project that the two worked on together, Hunt provided Kajima with an ACORD form that listed Hunt's insurance policy dates. *Hopper*, 383 S.C. at 313, 680 S.E.2d at 2. In the section entitled "DESCRIPTION OF OPERATIONS/LOCATIONS" the project number, subcontract number, and the claim deductible amount appeared. *Id.* The ACORD form presented to Kajima at the start of the Greenwood, South Carolina project, however, lacked key information. Unlike the previous certificate, the second form contained "no information regarding the coverage that the policy provided, the deductible amount, or the project to which the policy applied." *Id*. at 315, 680 S.E.2d at 3. In addition, the "DESCRIPTION OF OPERATIONS/LOCATIONS" block was blank, and the form showed a policy period that had expired at the time of Claimant's injury. *Id.*

The single commissioner found that the employer could not shift liability to the UEF "because the Certificate of Insurance did not indicate that Hunt had coverage in South Carolina."[3] *Id.* at 313, 680 S.E.2d at 2. On appeal, the supreme court held that because the form provided at the onset of the new project did not include "information regarding the coverage that the policy provided, the deductible amount, or the project to which the policy applied" it was incomplete. *Id*. at 315, 680 S.E.2d 3. The court stated, "In failing to fill out the entire [ACORD] Form, Hunt essentially submitted an incomplete document purporting to show that it had a workers' compensation policy, which Kajima accepted. In our view, accepting an incomplete A[CORD] form does not constitute proper documentation." *Id.* The court further found that Kajima could not rely on the policy because the effective date on the form had expired at the time the employee was injured, stating "a general contractor may not rely upon a Certificate showing an expired worker's compensation policy to show 'documentation' of the subcontractor's workers' compensation insurance." *Id*. at 316–17, 680 S.E.2d at 4.

We find that the present case is factually distinct from *Hopper*. First, JJS and Thompson are both South Carolina companies operating exclusively in South Carolina, unlike the parties in *Hopper*. Second, the parties in this case worked on one project during the entirety of their relationship, where the parties in *Hopper*

---

[3] The full commission agreed, but the circuit court reversed and found no evidence there was coverage only in Georgia. This court reversed the circuit court in *Hopper v. Terry Hunt Construction*, 373 S.C. 475, 646 S.E.2d 162 (Ct. App. 2007).

worked together on multiple projects. The "description of operations and/or locations" section of the form is important when the parties have contracted for multiple jobs or involve out-of-state entities in order to be certain coverage is in place for the specific project and that coverage extends to South Carolina. That is not a concern in this case where the subcontractor performed the same work at the same locations for the entirety of its relationship with the contractor. In this case the ACORD form produced by JJS showed all the pertinent information, including the type of coverage, policy limits, and effective dates. The form met all the requirements of Regulation 67-415 in that it showed a valid South Carolina address for JJS, and was dated, signed, and issued by an authorized representative of the insurance carrier. Despite the length of their relationship, Thompson did not rely on the original certificate but verified JJS's insurance annually to be sure that workers' compensation coverage remained in force. Thompson required the form be sent directly to him from the insurance agency and then verified coverage by phone call. It was stipulated by all parties that at the time Thompson received the certificate, the policy was in effect.

We find Thompson satisfied the requirements of section 42-1-415 and Regulation 67-415, and the Commission erred in holding that Appellant was not entitled to transfer liability. We recognize that section 42-1-415 presents a narrow exception to employer liability, and properly so. The purpose of requiring employers to properly document their subcontractors' insurance is to prevent a general contractor from "turn[ing] a blind eye to information which is readily evident upon a cursory inspection of the [insurance] Certificate." *Hopper*, 383 S.C. at 316, 680 S.E.2d at 4. We see nothing in the record here to suggest Thompson had reason to suspect that JJS's policy had lapsed.

 B.  Timeliness of Documentation Submission

Thompson argues the commission erred in finding that it failed to meet the timely submission requirement of section 42-1-415(B). We agree.

To qualify for reimbursement under section 42-1-415(B), the documentation of insurance must be submitted to the commission "at the time a claim is filed by the injured employee." S.C. Code Ann. § 42-1-415(B) (2015). Respondent argues the language of the statute requires employers to file the certificate of insurance the same day the employee files a claim. We disagree. As Thompson points out, the statute does not require claimants to notify employers when they file a claim. Instead, the commission notifies the employer's representative. S.C. Reg. 67-206(E) (2010). The UEF's interpretation of the statute would require an

employer to anticipate a claim being filed and file its certificate of insurance on the same day, even though it has not yet received notice of the filing. We do not believe the legislature intended to set up an obstacle that is impossible for employers to overcome. *See Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the[l]egislature or would defeat the plain legislative intention. If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect." (citations omitted)).

Thompson filed the certificate thirty-four days after Claimant filed.[4] We find this to be a reasonable amount of time given the absence of a specific time limit in the statute and given the circumstances here. Thompson's owner testified that at the time of the injury, he and JJS's owner both believed that JJS had a valid workers' compensation policy in place. The record indicates that once Thompson was made aware of the lapse of JJS's policy, it performed its due diligence and submitted the documentation in a timely fashion.

C. Timeliness of Petition to Transfer Liability

Thompson argues the commission erred in holding that its petition to transfer liability to the UEF was premature. We agree.

Section 42-1-415(A) states that the statutory employer "shall in the first instance pay all benefits due under this title" but "may petition the commission to transfer responsibility for continuing compensation and benefits to the Uninsured Employers' Fund." S.C. Code Ann. § 42-1-415(A); *see also Tillotson v. Keith Smith Builders*, 357 S.C. 554, 559, 593 S.E.2d 621, 624 (Ct. App. 2004) ("[Section] 42-1-415[(A)] requires the upstream contractor initially pay all benefits due to the subcontractor's injured employee. The contractor may then petition to transfer responsibility of future payments to the [UEF].").

---

[4] The commission found Thompson did not submit the ACORD form until three months after the claim was filed. This was error. The parties stipulated the certificate of insurance was submitted on October 18, 2011, thirty-four days after Claimant filed.

Claimant was awarded the statutory maximum of 500 weeks of total disability compensation and payment of medical expenses.[5] Thompson has now satisfied the requirements of section 42-1-415(A) by paying Claimant the statutory maximum benefits and paying all Claimant's ongoing medical treatment as of the filing of this appeal.

**CONCLUSION**

For the above reasons, we reverse the decision of the Workers' Compensation Commission and find Thompson is entitled to transfer liability to the UEF.

**REVERSED.**

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**

---

[5] *See* S.C. Code Ann. § 42-9-10(A) (2015).